## CHAMBERS *v.* UPTON *et al.*

*(Circuit Court, W. D. Michigan, S. D.* March 14, 1888.)

1. MALICIOUS PROSECUTION—LIBELING VESSEL—DAMAGES.

The D. and the S., engaged in freight and passenger traffic between the Lake Michigan ports of Manistee and Frankfort, were rivals in business. Certain stockholders in the S., learning that a chattel mortgage on the D. was overdue, entered into a combination with one Z. to get the D. out of the way by buying in the mortgage and foreclosing it, said stockholders to pay, each, his proportion of the purchase money. This was done, and the vessel seized the next night at her dock in Frankfort, by the sheriff and the nominal assignee of the mortgage, and sent with Z. to Milwaukee, to report to M., a proctor there to whom said stockholders claimed to have shown a copy of the mortgage, and who advised them that they might do what they afterwards did. The mortgage, which was made and filed in Michigan, was in the usual form, and contained no provisions as to foreclosure, except that notice thereof was to be given for at least 30 days by publication in a Ludington, Mich., paper, a provision which was not complied with. The day after the D.'s arrival in Milwaukee, Z., by M., libeled her in behalf of his father for a half interest. The D. was thereby detained 30 days, at the end of which time the libel was

dismissed. In the mean time her owner had paid the mortgage, with costs. About nine months before the seizure, Chambers, the owner, had libeled the D. for the purpose of establishing his title as sole owner in the district court in Michigan, and that libel subsequently was sustained, and decree was entered for libelant as prayed. It was admitted by defendants that the object of the removal to Milwaukee was to foreclose there, but the stockholders and assignee of the mortgage, who, with Z., were made defendants, denied any knowledge of Z.'s purpose to libel the vessel there.    *Held*, (1) that the removal of the D. was tortious, and that her owner was entitled to recover against all the defendants the value of the use of the vessel during the time she was detained, for his own time and reasonable personal expenses in recovering her, and the expense of putting her in the same state of repair as when she was taken, but not for his costs in prosecuting the libel filed in Michigan; (2) that none of the defendants except Z. were liable for the reasonable costs and expenses of counsel in the Milwaukee suit, unless they authorized or ratified that proceeding; and (3) that exemplary damages could not be recovered, unless the seizure was wanton and malicious.

2. SAME—ADVICE OF COUNSEL.
    Advice of counsel is no defense to an action for a tort committed on property, unless the advice was taken and followed in good faith; and not then except as to exemplary damages.[1]

3. DAMAGES—ACTION AGAINST SEVERAL DEFENDANTS—JOINT JUDGMENTS.
    Where there are several defendants, and the items of damages are distinct, a joint judgment cannot be entered, unless each defendant is liable to the full extent of the verdict.

At Law.

The plaintiff was the owner of a steam-vessel known as the "John D. Dewar," and the boat was engaged in passenger and freight traffic between the Lake Michigan ports of Manistee and Frankfort.    On the 13th day of September, 1886, a suit was begun in the United States district court for the Western district of Michigan, Southern division, by Chambers against defendant Zimmerman; Chambers claiming title as sole owner to the vessel, and Zimmerman claiming in behalf of John W. Zimmerman, his father, one-half interest.    Final decree in favor of Chambers was made in that case January 4, 1888.    All of the defendants except Zimmerman were stockholders in a steam-vessel known as the "George D. Sanford," engaged in the same business, and on the same route; and the boats were rivals in business.    In July, 1887, a chattel mortgage existed on the Dewar for about $3,700, (the same indebtedness being also secured by a real-estate mortgage;) and she was worth from $7,000 to $9,000.    About $375 was past due on the chattel mortgage, which was held by Charles G. Wing, as executor of a will.    Defendant Zimmerman and the other defendants entered into a combination to get the Dewar out of the way by means of this chattel mortgage. They met together, and each defendant except Zimmerman paid in a proportion of the money necessary to purchase the chattel mortgage, and on the 28th day of June, 1887, they procured Wing to assign the chat-

[1]As to how far the defendant, in an action for malicious prosecution, may rely upon the advice of counsel, and as to the necessity of stating to counsel all the facts in the case upon which advice is sought, see Railroad Co. v. Hunt, (Vt.) 7 Atl. Rep. 277, and note; Walker v. Camp, (Iowa,) 27 N. W. Rep. 800, and note; Moore v. Railroad Co., (Minn.) 33 N. W. Rep. 334; Fire Ass'n v. Flemming, (Ga.) 3 S. E. Rep. 420; Mesher v. Iddings, (Iowa,) 34 N. W. Rep. 328; Donnelly v. Daggett, (Mass.) 14 N. E. Rep. 161; Glasgow v. Owen, (Tex.) 6 S. W. Rep. 527; Manning v. Finn, (Neb.) 37 N. W. Rep. 314.

tel mortgage to defendant Upton, paying him the face thereof. On the next night, June 29, 1887, the vessel was at her dock in Frankfort, and Upton, with the sheriff and others, seized her, forcible dispossessing the captain and crew employed by Chambers, claiming to do so by virtue of the chattel mortgage, and sent defendant Zimmerman with her to Milwaukee, to report for orders to G. C. Markham, their proctor. Markham was also Zimmerman's proctor in the litigation about his claim to one-half of the vessel. Defendants claimed to have exhibited to Markham, as their counsel, a copy of this chattel mortgage before they bought it, and that he advised them they could with it seize and take the vessel to Milwaukee, and there foreclose the mortgage; and they claimed this course was taken pursuant to such advice. The vessel arrived at Milwaukee June 30th, and the next day the defendant Zimmerman, by Markham, as proctor, filed a libel in the United States district court at Milwaukee in favor of his father, John W. Zimmerman, making claim for John W. to one-half interest in the vessel, in the same manner as in the suit in the United States court in Michigan, and praying that the vessel be sold and the proceeds divided. Process issued, and the vessel was seized on this claim; and the vessel was thus detained about 30 days at Milwaukee, when the libel was dismissed by the court. In the mean time Chambers paid the chattel mortgage and the costs, and immediately put the vessel back on the route. Chambers claimed to have tendered the full amount of the chattel mortgage the second day after the seizure, and that Upton replied by referring him to Markham, his counsel. The defendants admitted that they intended to foreclose the mortgage, and get title to the boat; but all except Zimmerman disclaimed any knowledge as to the purpose to file the libel in Milwaukee. Plaintiff claimed that the libel was a part of the whole scheme, and was contemplated by all the defendants before the seizure. No proceedings were taken to foreclose the mortgage further than already stated. The chattel mortgage was in the usual form; and as to power of foreclosure nothing was said, except that it was written in it that in case of foreclosure notice of at least 30 days should be given by publication in a newspaper published at Ludington, Mich. The mortgage was made and filed in Michigan. Plaintiff claimed damages for loss of good-will, and injury to trade; for loss of use of vessel for 30 days; for expense of keeping crew employed 30 days waiting the recovery of the boat; for damage to the vessel by want of care and exposure while away; for expenses in procuring the restoration of the vessel; for attorneys' fees paid in the matter; for loss of time; and for exemplary damages.

*Godwin, Adsit & Dunham*, for plaintiff.

*Fletcher & Wanty*, for defendants.

SEVERENS, J., (*charging jury.*) The verdict in this case must be for the plaintiff. The question for you is, what amount of damages should the plaintiff recover. He is entitled to recover—*First.* For the value of the use of the vessel during the time she was detained from him. *Second.* For his own time and personal expenses in recovering the posses-

sion of the vessel. *Third.* The expense of putting the vessel in the same state of repair as when she was taken. *Fourth.* The costs and expenses of the employment of counsel in the suit at Milwaukee in maintaining his right to the vessel. This would include the services of counsel in Michigan, so far as such services were involved in the Milwaukee case; but it would not include the costs or expenses of counsel in the suit then pending in the admiralty court of this district. The costs and expenses mentioned in all the foregoing points must have been reasonable.

But the right of the plaintiff to recover for the items stated in this last head is qualified by the condition that that suit was authorized or ratified by the defendants; so that the proposition with the qualification is this: the plaintiff is entitled to recover for his counsel fees and expenses of the suit in Milwaukee, incurred by him necessarily in his defense there; provided you find that the defendants, all of them, either authorized the proceeding taken in that suit, expressly, or by such general delegation of authority to Markham as would justify him in instituting it; or, if they did not do this, that, after such proceeding was taken, they approved it; for such subsequent ratification is in law equivalent to a previous authorization to do what was done. The defendants must each be shown to be liable to the extent of the verdict in order that a joint judgment should be rendered against them. The items of damages already mentioned are those recoverable on general grounds. And these are the only damages that should be included, unless you also find that the seizure was wanton and malicious. But such an element does not exist where the defendant does what he does in a *bona fide* belief that he has a legal right to do what he does. The defendants had a right to buy this mortgage, and to take rightful steps to foreclose it. It would not, in such case, matter that they expected to buy in the boat, or that some other person would, and so take the boat out of competition with the other boat. They had legal right to do this. But they had no right to seize the vessel for the purpose of taking her to Milwaukee, and there foreclosing the mortgage. This was unlawful, and they are liable for the consequences already stated. If they took the boat to Milwaukee believing they might lawfully do so, they are not liable beyond such consequences. But if you find that they did not found their action upon such belief, but, with indifference to the legal right, they acted with a wanton and malicious purpose to get the boat out of the way, by any available means, whether right or wrong, then you may also add to the actual damages such sum as you think fit to impose by way of example, upon your own impression of the circumstances of aggravation. Upon this question of the good faith of the defendants, it is pertinent to know whether they acted upon the advice of counsel. When a man lays his business before a reputable attorney, gives him the facts, and then proceeds in good faith in accordance with the advice he gets, malice cannot be charged against him; and while he may be liable to actual damages, if the advice was bad, he is not liable to exemplary damages. The question on this head turns on this point: Did the defendants commit

the acts complained of in the actual belief that they could lawfully do so? or did they act in wanton disregard of the lawful rights of the plaintiff?

There was a verdict for plaintiff for $2,668.