MARQUARDT et al. v. FRENCH.[1]

(District Court, S. D. New York. January 5, 1893.)

1. MARITIME CONTRACTS.
   A contract to procure insurance is not a maritime contract, enforceable in admiralty.

2. SAME—CONTRACT OF INSURANCE—REPRESENTATIONS.
   Respondent, a carrier and forwarder, on receiving certain barrels of cement at New York, delivered to libelants a bill of lading stamped as follows: "Insured Buffalo to Mil. $5,400. Premium paid." A marine loss having occurred in transit, libelants brought this suit, alleging that the stamped bill constituted a contract equivalent to a valued marine policy issued by the respondent, on which they were entitled to recover $5,400, though such sum was beyond their actual loss. *Held,* that the stamp was not a policy or contract of insurance, but merely a representation or guaranty that insurance in the amount stated had been or would be effected, which interpretation was borne out by the evidence as to the previous negotiations of the parties; that the libel could not be sustained; and that it could not be amended so as to proceed upon such a representation or guaranty, because that was not a maritime contract, but a preliminary contract only, of which an admiralty court has no jurisdiction.

In Admiralty. Libel by Minna F. Marquardt and others against Henry C. French to recover insurance. Decree for respondent.

[1]Reported by E. G. Benedict, Esq., of the New York bar.

George A. Black, for libelants.

Wing, Shoudy & Putnam, for respondent.

BROWN, District Judge. The respondent for some 10 years past has been engaged in the business of common carrier of merchandise in New York and Buffalo, and as a forwarder from that port to western ports. His business is transacted in the name of the Union Transit Company, having his principal office in Buffalo, and a branch office in this city in charge of Mr. Demarest. On the 19th of November, 1891, Mr. Demarest issued to the libelants a bill of lading reciting the receipt by the Union Transit Company, in apparent good order, of 1,800 barrels of cement, which that company agreed "to forward by its own or other means of transportation," subject to all the conditions therein contained, "to Milwaukee, Wis.," "to be delivered at the dock of the Western Lime and Cement Company," "upon payment of freight at the rates named" in the bill of lading. The bill of lading, when delivered to the libelants, had indorsed upon it the following stamped mark: "Insured, Buffalo to Mil. $5,400 00-100 @ premium paid." In this stamp "Mil." and "5,400" were writing; the other words were printed.

The libel charges that the above-described stamp constituted a contract of insurance between the respondent and the libelants. The libel, referring to the terms of the bill of lading, alleges that the respondent "at the same time and by the same instrument [bill of lading] insured said property from Buffalo to Milwaukee, valued at the agreed value of $5,400." A loss on the lakes having occurred which was treated as total, the libelants further contend that this stamp was equivalent to a valued marine policy, whereby the libelants became entitled to recover the agreed value, $5,400, although that sum considerably exceeds the actual value of the property, and the actual loss which the libelants have sustained. Under the stipulation and deposit of moneys arranged between the parties, I find that the libelants have received all their actual loss. They claim a balance of $985.50 against the respondent personally as an insurer by express contract upon a valued policy for $5,400.

I cannot sustain the interpretation of the stamp, or that of the preceding negotiations between the parties, for which the libelants contend. The respondent was not in the insurance business and never had been. His business was only that of a carrier and forwarder. The bill of lading itself so imported. There was nothing in the circumstances or in the negotiation of the parties that gives any countenance to the idea that Mr. Demarest meant to become an insurer himself, or to charge his principal as an insurer, at the time when the bill of lading was stamped and issued; nor anything to indicate that the libelants then expected either Mr. Demarest or the respondent to be an insurer of the cement. Mr. Demarest evidently had no actual authority to enter into any express contract of insurance to bind the respondent; and I see nothing in the circumstances which could have led the libelants to suppose that he had any such authority.

It was, however, customary, as was well known to the libelants, for carriers and forwarders, on receiving goods on a through bill of lading, to undertake to procure insurance for the shipper. The practice here in that regard has been, as the evidence shows, for the carrier's agent to attend to such business as a personal perquisite, and for the shipper's convenience; and to give a certificate of such insurance to the shipper, when the amount of insurance was considerable, say for $10,000 or upwards; but to indicate that insurance was to be obtained in smaller amounts, by putting an insurance stamp upon the bill of lading. The stamp most commonly used states the company in which insurance has been or is expected to be effected. On the day this bill of lading was issued, Mr. Demarest effected insurance on the cement for the sum of $5,400 in the Atlantic Mutual Insurance Company, in the usual form of the open policy issued by that company, in the name of Mr. Onderdonk, "for account of whom it might concern," but intended for the libelants. The stamp put on the bill of lading did not state the company, because, as Mr. Demarest said, he had no stamp containing that company's name. The libelants were well acquainted with the use of these stamps, with the name of the insurance company inserted, as they had shipped quite a number of consignments previously during the same year upon bills of lading stamped in that manner.

When this bill of lading was received, no objection was made to the form of the stamp, nor was any inquiry made as to the company in which the insurance was to be effected. Nothing occurring at the time indicates that either party expected Mr. Demarest was to do anything more than to obtain insurance for account of the libelants, according to the customary practice. The cement was delivered to the consignees at Milwaukee by two vessels on December 2d and 8th. On December 17th the libelants were informed of the damage. Their correspondence in reference to it was with Mr. Demarest; but there was no clear statement of any personal demand upon him, or upon the respondent, until three months afterwards—March 16th, unless the letter of March 4th be deemed such, which seems to me ambiguous. And as late as April 11th they asked to be informed definitely whether "we can sell the cement without prejudice to our claim against your company, $\frac{and}{or}$ the insurance company." The original conversation between the parties on the subject of insurance must have been very brief. In the testimony neither side undertakes to give any precise statement of the the conversation. It seems to have been nothing more than that the cargo was to be insured for $3 per barrel, which would amount to $5,400; and it was insured for that sum in one of the best companies, in its usual form. Nothing in this evidence warrants the supposition that either side then supposed the respondent was to be an insurer.

Upon the evidence, therefore, I am of the opinion that the previous conversation between the parties amounted to nothing more than a request that Mr. Demarest should effect insurance; and that the stamp affixed to the policy did not import any contract of insurance in itself, as between the libelants and the respondent; but was only

a representation or guaranty that insurance in the amount stated had been or would be effected for the libelants' benefit, as was actually done. Such in effect seem to me to be the decisions in the cases of Scranton Steel Co. v. Ward's D. & L. S. Line, 40 Fed. Rep. 866, and Johnson v. Campbell, 120 Mass. 449.

Upon that view of the meaning of the stamp, this libel cannot be sustained. For if the insurance effected by Mr. Demarest was a proper insurance in a proper company, then he fully discharged all that, by this stamp, he undertook to do. I am inclined to think that under the proofs the policy fulfilled all that the stamp or the conversation between the parties imported. This stamp does not import a valued marine policy in the technical sense; and the custom proved shows that the libelants had no right to a valuation beyond 10 per cent. over the cost price. The libelants did not bind themselves to pay any freight; for by the bill of lading, the freight was payable by the consignee on delivery at the lime and cement company's dock at Milwaukee; and the evidence showed that the particular average clause was not practically treated as a part of the policy in the lake business.

But it is immaterial in the present action whether the form of the policy taken out by Mr. Demarest was precisely such as the libelants might have wished, or expected. The form of policy obtained was one often used; and any variation in the forms of different companies would not make the present case analogous to those cases in which there is an entire absence of insurance effected, or a plain departure from the obligation assumed.

But still further than that, I am of the opinion that even had Mr. Demarest not effected any insurance for the libelants' benefit, still no action could have been sustained in a court of admiralty for the breach of such an obligation. The contract of insurance, indeed, is a maritime contract, and as such is within the jurisdiction of an admiralty court. But a contract or obligation to procure insurance, such as I find this obligation to have been, is not a contract of insurance, nor is it a maritime contract. It is upon the other side of the line dividing contracts which are maritime from those which are not maritime. Such a claim does not differ in principle, so far as the jurisdiction of a court of admiralty is concerned, from a suit to recover compensation for a broker's services in obtaining a charter party; or for building a ship, or for soliciting freight. See The Thames, 10 Fed. Rep. 848; The Crystal Stream, 25 Fed. Rep. 575; The Paola R., 32 Fed. Rep. 174; Doolittle v. Knobeloch, 39 Fed. Rep. 40; Diefenthal v. Hamburg, 46 Fed. Rep. 397. For the libelants it is, indeed, claimed, that a failure to effect insurance as agreed, would render the agent undertaking to obtain it liable himself as insurer. The cases cited of Morris v. Summerl, 2 Wash. C. C. 203, and of Manny v. Dunlap, 1 Woolw. 372, are not applicable on the point of jurisdiction. What is intended by those decisions is that the agent is liable to make good the loss as if he had been an insurer; that is, the extent of his liability is the same. But as the agent's express contract or obligation in this case, viz. to procure insurance, was not itself a maritime contract, manifestly the mere breach of

that contract is not maritime, and hence not within the jurisdiction of this court. No amendment of the libel could, therefore, avail the libelants.

Though the libel, therefore, cannot be sustained, the libelants are entitled to the benefit of the stipulation, and of the money paid under it, as a tender and deposit in court. The Rossend Castle, 30 Fed. Rep. 462. The respondents are entitled to costs from the time of the stipulation and payment.