LA FONCIERE COMPAGNIE D'ASSURANCES CONTRE LES RISQUES
DE TRANSPORTS DE TOUTE NATURE v. KOONS et al.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1896.)

No. 278.

MARINE INSURANCE—INTERPRETATION OF POLICY—SETTLEMENT OF LOSS.

An insurance company issued a policy of marine insurance to K., on 500
cases of salmon, on a voyage from Portland, Or., to New York. The
policy provided that perishable articles were insured only against general
average and absolute total loss, and the insurer should not be liable for
a constructive total loss if any portion of the articles were delivered in
specie at the port of destination. It also provided that the merchandise
was warranted by the insured free from particular average and partial
loss, unless caused by perils insured against, and amounting to 50 per
cent. or more on the sound value of the whole shipment at the port of
delivery, and all such loss should be settled on the principles of salvage
loss, with benefit of salvage to the insurers. The vessel on which the
goods were shipped sustained damage from a peril insured against, which
made it necessary for her to put into San Francisco, where 392 of the 500
cases of salmon, being found to be damaged, were sold by the master, the
remainder being carried to New York, where a part arrived in sound con-
dition. Held, that the clause in the policy, requiring a partial loss to
be "settled" on the principles of salvage loss, applied to the ascertainment
of the loss as well as to its payment, and, the loss sustained amounting,
when ascertained on such principles, to more than 50 per cent. of the
sound value of the goods at New York, the insurance company was liable.

Appeal from the District Court of the United States for the
Northern District of California.

There was a libel in admiralty by Frederick A. Koons and others
against La Fonciere Compagnie D'Assurances to recover a bal-
ance claimed to be due on a policy of insurance. The district
court gave judgment for the libelants. 71 Fed. 978. Defendant
appealed. Affirmed.

Andros & Frank, for appellant.

Charles Page, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY,
District Judge.

ROSS, Circuit Judge. This case was submitted to the court
below upon an agreed statement of facts, from which it appears
that on the 8th day of July, 1892, the appellant underwrote a policy
of marine insurance, whereby it insured, in the sum of $3,000,
on account of concerned, 500 cases of salmon, valued at $3,000,
laden on the bark Belle of Oregon for a voyage from Portland,
Or., to the port of New York, "beginning the adventure upon the
said property or interest from and immediately following the load-
ing thereof on board said vessel at Portland, aforesaid, and so
shall continue and endure until said property or interest shall
be safely landed as aforesaid." The perils insured against were
those of the seas, etc. The vessel sailed from Portland on the
8th day of August, 1892, and in the course of the voyage sustained
sea damage to an extent that rendered it necessary for her to
proceed to San Francisco as a port of distress, where she arrived

September 21, 1892. On her arrival there it was found that 392 of the 500 cases of salmon were so badly damaged that they could not bear transportation to New York, and were at San Francisco sold by the master at public auction for the benefit of all concerned, the gross proceeds realized at the sale being $1,415.84, and the net proceeds $1,341.50. After having been repaired at San Francisco, the vessel proceeded on her voyage, and arrived at New York on or about March 18, 1893. On the arrival of the vessel at that port it was found that 43 of the 108 cases of salmon that were reshipped at San Francisco were damaged to the extent of 35 per cent. The remaining 65 cases were delivered in good order. The sound value of the salmon at New York at the time of the arrival of the vessel at that port was $6.80 per case, and the expense at New York for appraising the damage was $10. By the memorandum clause of the policy it was agreed between the parties "that bar, bundle, rod, hoop, and sheet iron, wire of all kinds, tin plates, steel cutlery, hardware, and all other articles subject to rust, madder, sumac, willow and wicker ware (manufactured or otherwise), salt, guano, cigars except in tin packages, fireworks, saltpetre, grain and seeds of all kinds possessing the power of germination, tobacco, Indian meal, fruits (whether preserved or otherwise), cheese, dry fish, vegetables and roots, rags, hops, hempen yarns, bags, cotton bagging, and other articles used for bags or bagging, pleasure carriages, household furniture, printed books, personal effects, paintings, statuary, engravings and prints, skins and hides, musical instruments, looking glasses, ice, and all other articles that are perishable in their own nature, are hereby insured only against general average and absolute total loss; and the insurers are not to be held liable hereunder for any constructive total loss on such articles, if any portion thereof be delivered in specie at the port of destination." By clause 3 of the agreements and stipulations limiting the risk undertaken in the earlier part of the policy, it was provided that all merchandise not excepted from the memorandum clause "is hereby warranted by the insured free from particular average and partial loss, unless occasioned by stranding, sinking, fire, collision, or other extraordinary peril hereby insured against, and amounting to fifty per cent. or more on the sound value of the whole shipment at the port of delivery; and all such loss shall be settled on the principles of salvage loss, with benefit of salvage to the insurers." The sole contest between the parties to the suit is whether the facts show that the appellees have suffered a 50 per cent. loss, within the meaning of the policy. If they have, the judgment of the court below was right, and should be affirmed; if they have not, the judgment must be reversed.

The question is not, what would have been the rights and obligations of the respective parties under the general principles of the law of marine insurance, in the absence of the provisions of clause 3; but what is the true meaning of that clause, considered in connection with the other provisions of the policy? Thus read, and considering it in connection with the agreed facts, it is clear

that the contract of insurance in question was not limited by the provisions of clause 3 if the loss sustained by the appellees amounted to 50 per cent. or more of the sound value of the whole shipment at the port of delivery. The sound value of the whole shipment at the port of delivery, as agreed upon by the respective parties, was $6.80 per case, amounting to $3,400. If the loss sustained by the appellees amounted to 50 per cent. of that sum,—that is to say, to $1,700,—then, manifestly, the contract of insurance was not limited by the provisions of clause 3, and the insurer is liable. The real question, therefore, is, how is the loss sustained by the appellees to be ascertained? If the contract of the parties itself declares the method, that method must, of course, control. If, on the contrary, the contract does not so provide, then resort must be had to the general principles of the law of marine insurance for a solution of the question. As has been seen, clause 3 concludes with the words, "And all such loss shall be settled on the principles of salvage loss, with benefit of salvage to the insurers." It is contended on the part of the appellant, and properly so, that the word "such," here used, refers "to the particular average and partial loss" mentioned in the former portion of the clause; and it is further insisted by the appellant that when, by the contract, the parties provided that such loss should be "settled" on the principles of salvage loss, with benefit of salvage to the insurers, they were not providing the method by which such loss should be ascertained, but for the manner in which it should be paid. This is giving to the word "settled," in the connection in which it is used, too restricted a meaning. Ordinarily, the settlement of a loss insured against ex vi termini includes an adjustment of the amount to be paid, as well as the payment of the amount when ascertained; and we think it clear that such is its meaning as used in the policy in question. The loss sustained by the appellees is, therefore, under the terms of the contract, to be ascertained in accordance with the principles of salvage loss, with benefit of salvage to the insurers. That the loss in question, adjusted in accordance with those principles, exceeded 50 per cent. of the sound value of the whole shipment at the port of delivery, is obvious, and, indeed, is not denied by the learned proctor for the appellant.

In thus giving effect to what we think is the meaning and intent of the contract that the parties themselves made, no injustice results to the appellant. The insurer agreed to pay the assured for any particular average and partial loss sustained by a peril insured against, in the event such loss should amount to 50 per cent. or more of the sound value of the whole shipment at the port of delivery, at the same time, and as a part of the contract, stipulating that such loss, if sustained, should be settled upon the principles applicable to a salvage loss, with benefit of salvage to insurer. It thus reserved to itself the full benefit of salvage. Under the circumstances, it is just, as well as matter of contract, that the loss sustained by the appellees by the necessary sale at San Francisco of the 392 cases of salmon be treated as a total loss to them. Judgment affirmed.