THE CITY OF CLARKSVILLE.

(District Court, D. Indiana. May 4, 1899.)

No. 422.

**1.** SHIPPING—LOSS BY FIRE—EFFECT OF STATUTE.
Rev. St. § 4282, governing the liability of vessel owners for loss by fire "happening to or on board the vessel," has no application to a case where goods were destroyed by fire after they had been unloaded from the vessel onto a wharf boat.

**2.** CARRIERS—CONTRACT LIMITING COMMON-LAW LIABILITY.
The provision of section 196 of the Kentucky constitution, prohibiting common carriers from contracting for relief from their common-law liability, does not prevent a carrier from stipulating where goods shall be delivered, nor from contracting that, after they had been so delivered for transshipment by a connecting carrier, its common-law liability as a carrier shall cease.

**3.** ADMIRALTY JURISDICTION—MARITIME CONTRACTS—CONTRACTS TO PROCURE INSURANCE.
A contract by a carrier by water to procure insurance on goods received for transportation is not a maritime contract, creating a maritime lien, and a court of admiralty has no jurisdiction of a suit for its breach.

This is a libel in rem, in admiralty, on an alleged contract, civil and maritime, against the steamboat City of Clarksville, her boats, tackle, apparel, and furniture, and against all persons lawfully intervening, for their interests therein. The amended libel articulately propounds in substance as follows:

(1) That the steamboat is enrolled at the city of Evansville, Ind., and is of more than 20 tons burden, and is engaged in commerce upon the navigable rivers of Kentucky and Indiana, and has been so engaged for a long time, in carrying freight, and in making contracts therefor, from Bowling Green, Ky., to Evansville, Ind., and to other places upon the navigable waters of the United States.

(2) That on or about April 1, 1896, libelants had a quantity of tobacco which they desired to ship to the firm of Kendrick and Ryan, doing business under the name of the "Central House," in Clarksville, Tenn. That on or about February 1, 1896, the steamboat, by its duly-authorized agent, solicited libelants to ship their tobacco by and upon it from Bowling Green, Ky., to the Central House, at Clarksville, Tenn., and then and there agreed with them, in consideration of shipping on this steamboat, and of the money to be paid for the carriage of the tobacco, that it would cause the tobacco to be insured against loss by fire in the consignee's open fire policy from the time such tobacco was received by the steamboat until the same was delivered to the consignee at Clarksville, Tenn. That in pursuance of said agreement, on or about April 7, 1896, libelants delivered to the steamboat at Bowling Green, Ky., seven hogsheads of tobacco, of the value of $150 each, to be carried by

the steamboat and delivered to the consignee. That thereupon the steamboat, by its master duly authorized thereunto, delivered to libelants three bills of lading, one of which is as follows:

"Steamer City of Clarksville.

"Shipped in apparent good order and condition, by N. C. [meaning libelants], on board the good steamer the City of Clarksville, the following articles described below, which are to be delivered in like order, without unavoidable delay, the dangers of navigation, fire, explosion, and collision excepted, on the wharf boat or landing at the port of Evansville, Indiana, twenty feet from the water's edge, where carrier's responsibility shall cease, with privilege of lightering, towing, storing, reshipping unto Clarksville, Tennessee, or assigns, he or they paying freight for said goods at the rate of 15 cents per hundred pounds, and charges, $2.00. But not responsible for breakage of castings, or glassware; mud, wet, and old damaged baggaging; nor for the leakage or breakage of liquor or decay of perishable articles; nor for unavoidable accidents to, or escape of, stock. No claim for damages after freight leaves the levee.

"In testimony whereof the owner, clerk, or master of said boat hath affirmed to —— bills of lading, all of this tenor and date, one of which being accomplished, the other stands void. Dated at Bowling Green, Ky., this 8th day of April, 1896.

| "Marks and Consignments. | Articles. |
| --- | --- |
| "N. C. | 1 Hhd. Tobacco. |
| "Central House, Clarksville, Tenn. | 17# |
| "Insured in consignee's open fire policy. | W. W. Server, Master. |
| "April 8, 1896." | |

That each of said three bills of lading is a copy of the other, except as to date and number of hogsheads of tobacco described therein. That the master, being duly authorized thereunto, in pursuance of the verbal agreement above stated, indorsed in writing upon each bill of lading, before delivering the same to libelants, the words, "Insured in consignee's open fire policy," and signed the name, "W. W. Server, Master" of said steamer, to such indorsements.

(3) That, at and before the time the contract of affreightment was made, the constitution of Kentucky, in which state said contract was made, contained this provision: "Sec. 196. No common carrier shall be permitted to contract for relief from its common-law liability." That the court of appeals of Kentucky, which is the highest court of judicature of said state, by its decisions since the adoption of said constitution, holds that the above-quoted constitutional provision is self-executing, and that it became of full force and operative as the law of Kentucky as soon as the constitution was adopted, and that it is, and remains, in full force, and applies to all contracts made by common carriers since the adoption of said constitution.

(4) That the steamboat took possession of the tobacco for the purpose of shipment, and carried the same to the port of Evansville, Ind., and landed the same on the wharf boat at said port for the purpose of being transshipped on another steamer to Clarksville, Tenn. That while the tobacco was on said wharf boat, and on or about April 15, 1896, it was totally destroyed by fire. That the undertaking by said steamboat to insure said tobacco in the consignee's open fire policy was without any authority whatever from said consignee, and said consignee had no policy of fire insurance upon said tobacco, and said tobacco was never insured in any open fire policy or otherwise of said consignee, and said steamboat altogether failed to perform its undertaking to have said tobacco insured. That said tobacco was shipped by them upon said steamboat solely in consideration of said undertaking on the part of said steamboat that said tobacco would be insured in said consignee's open fire policy, and, had it not been for such agreement, libelants would not have shipped said tobacco on said steamboat. By reason of the premises, the libelants have sustained damages in the sum of $1,050, and interest on said sum since April 15, 1896.

(5) That all and singular the premises are true. Wherefore process is prayed against the steamboat, etc., and that the damages be decreed to be paid, etc.

The master and owners of the steamboat filed answer and exception in substance as follows:

(1) They admit the allegations of article 1 of the libel to be true.

(2) They admit that the steamboat, at the times mentioned in the libel, received certain tobacco from the libelants at Bowling Green, Ky., consigned to Clarksville; that the steamboat issued to libelants certain bills of lading, as described in the libel; that said bills of lading bore an indorsement as stated in the libel, which indorsement was put on by respondents' agent; that said tobacco was carried to the port of Evansville, and while lying at said port, awaiting transshipment to Clarksville, the same was destroyed by fire; that respondents received from libelants the stipulated price for carriage.

(3) As to all other matters alleged in said libel, they deny that the same are true, and state that the facts attending the shipment were as follows: Neither the steamboat nor respondents had any agent to solicit freight from libelants; that, if any one did solicit freight from them for the steamboat, it must have been a teamster, who represented his own business, and not respondents or their steamboats; that the first respondents knew about this tobacco was from the libelants themselves, who asked respondent Server to give them the rate to Clarksville; that Server gave them the rate, and libelants delivered to the steamboat, at her landing in Bowling Green, the tobacco in the libel mentioned, for shipment under the terms of Server's offer; that nothing was said to respondents, or to any agent of the steamboat, about insurance till after the delivery of the tobacco to the boat; that after such delivery libelants requested respondents' agent to make the indorsement set out in the libel on said bill of lading, so that the libelants might have insurance; that the indorsement was made after the contract of affreightment had been completed, and was no part thereof, and was no promise or agreement of respondents or their boat, and was wholly without consideration; that the indorsement was made because there is a general custom among tobacco shippers for the consignee to carry open insurance, for which the consignor is charged by him, but for the consignor to obtain the benefit of such insurance it is necessary for the bills of lading, when delivered by the boat to the shipper, to bear the indorsement stating, in effect, that the shipper claims such insurance, and signed by the master of the boat.

(4) Respondents say the court has no jurisdiction of the matters contained in the libel, the same not being matters of admiralty and maritime jurisdiction, the said libel being filed to enforce a claim for damages arising out of the nonperformance by said steamboat, its owners and agents, of a contract to procure insurance, which is not a maritime contract, and respondents and exceptants pray the same advantage thereof as if the same were separately and formally pleaded to said libel.

The master heard the cause, and found and reported the facts substantially as set out in the libel, and recommended a decree in favor of libelants for $1,050, with interest thereon from April 15, 1896. The respondents have filed numerous exceptions to the finding and report of the master, but, after an attentive examination of the evidence, I am satisfied with his finding and report of the facts. If the libel states a good cause of action within the jurisdiction of a court of admiralty, I am of opinion that the same is made out by the evidence, and that there ought to be a decree for the libelants, as recommended by the master.

Gilchrist & De Bruler, for libelants.

Posey & Chappell and R. J. Meyler, for respondents.

BAKER, District Judge (after stating the facts as above). Two grounds of liability are relied upon by the libelants: First. It is insisted that the steamboat could not limit its liability as a com-

mon carrier by reason of the prohibition in the constitution of the state of Kentucky above quoted, and that it is responsible as such common carrier. Second. It is further insisted that the steamboat is responsible on the ground that it became an insurer of the tobacco from the time of its delivery, and remained responsible for its loss by fire until it was delivered to the consignee at Clarksville.

The first section of the act of congress (Rev. St. § 4282) approved March 3, 1851, does not apply to the facts of this case. This section is copied from the second section of Act 26 Geo. III. c. 86, which received a judicial interpretation by the court of queen's bench in Morewood v. Pollok, 18 Eng. Law & Eq. 341. It was there held that the act did not extend to the case of a fire occurring on a lighter in which cotton was being conveyed from the vessel to the shore. This decision is in conformity with the language of the act which limits its operation to a fire happening to or on board the vessel. Without a departure from the plain reading of the words of the act, I cannot extend it to a fire happening on board of the wharf boat lying alongside the shore. The constitution of the state of Kentucky would be inoperative in any case to which the above statutory provision extended. The act of congress was passed in pursuance of an express grant of power, and such act is valid and operative, anything in the constitution or laws of the state of Kentucky to the contrary notwithstanding. The act of congress, however, is inapplicable to the present case, because the loss did not happen from a fire to or on board the vessel. It is equally evident that the provision of the constitution of the state of Kentucky relied upon does not apply because the loss happened after the delivery of the goods on the wharf boat, where the libelee's responsibility as a carrier was at an end, and its only responsibility was that of a wharfinger or warehouseman. This is the express agreement contained in the bill of lading. The constitutional provision does not attempt to limit the right of a carrier to stipulate where the delivery of the goods shall be made, nor does it prohibit the making of a contract for relief from its common-law responsibility as a carrier when it has made a delivery of the goods pursuant to the terms of its bill of lading. There is no allegation in the libel imputing the loss to the negligence or want of care of the libelee. It does not proceed on the theory of a loss arising from want of care.

If any recovery can be had, it must be upon the ground of a breach of the contract to procure insurance, or on the ground of a false representation that the tobacco had been insured. There is no claim that the respondents were, or were to become, themselves the insurer. They were not in the insurance business, and never had been. Their business was only that of a carrier and forwarder. The bill of lading so imports. There was nothing in the circumstances or in the negotiations of the parties that gives any countenance to the idea that the steamboat or its owners meant to become the insurer themselves, or to charge the boat or its owners as insurers, nor anything in the libel or proofs to indicate that the libelants expected either the boat or its owners to become insurers of the tobacco. The libel alleges that it was agreed in consideration of shipping the

tobacco on the steamboat, and of the money to be paid for its carriage, that the steamboat would cause the tobacco to be insured against loss by fire in the consignee's open fire policy from the time that it was received at the landing at Bowling Green until the same was delivered to the consignee at Clarksville. It is then averred that, in pursuance of said agreement, the libelants delivered the tobacco to the steamboat for carriage. The breach of the contract is averred thus: That the undertaking by the steamboat to insure the tobacco in the consignee's open fire policy was without any authority from the consignee, that the consignee had no open fire policy, and that the tobacco was never insured in any open policy of the consignee or otherwise, and that the libelee wholly failed to perform its undertaking to have said tobacco insured. It is to be observed that the contract of affreightment had been fully performed by the carriage and delivery of the tobacco without damage on the wharf boat at Evansville, Ind., as stipulated in the bill of lading. No action could be maintained on the bill of lading for failure to deliver. The only thing left unperformed was in failing to insure in the consignee's open fire policy. The failure of libelants to allege or prove that the amount for which the tobacco was to be insured was stated or agreed upon is a circumstance tending to support the respondents' contention that it was libelants' duty to forward the bill of lading to the consignee and have him effect the insurance. I do not care, however, to dispose of the case on this ground.

The facts of this case clearly distinguish it from the case of Rosenthal v. The Louisiana, 37 Fed. 264. That was a libel for a failure to deliver pursuant to the contract of affreightment, and the verbal agreement to insure the goods before they were placed on board was incidental to the main contract for the breach of which the suit was brought. The agreement set out in the present libel is simply a contract or undertaking to procure insurance.

A contract of insurance effected on goods transported by water, whatever doubts may have been at one time entertained, is now firmly settled to be a maritime contract. Insurance Co. v. Dunham, 11 Wall. 1. But a contract to procure insurance, such as this contract is alleged to be, is not a maritime contract, nor is it a contract of insurance. It is on the other side of the line dividing contracts which are maritime from those which are not maritime. A suit to recover damages for the breach of a contract to procure insurance is purely a common-law action, and is not within the jurisdiction of the admiralty. Marquardt v. French, 53 Fed. 603. Such a claim does not differ in principle, so far as concerns the jurisdiction of a court of admiralty, from a suit by a shipping broker to recover compensation for services in procuring a charter party (The Thames, 10 Fed. 848); or by an agent employed to solicit freight (The Chrystal Stream, 25 Fed. 575); or for compressing cotton preparatory to shipment (The Paola R., 32 Fed. 174); or for buying a ship, and traveling on her to look after the owner's interest (Doolittle v. Knobeloch, 39 Fed. 40); or from a contract with the owners to supply their ships for the period of one year with provisions (Diefenthal v. Hamburg-Amerikanische

Packetfahrt Actien-Gesellschaft, 46 Fed. 397); or from a contract for building a ship. In The Havana, 54 Fed. 201, 203, it is held that money loaned to a shipowner to enable him to pay necessary bills for advertising in newspapers the excursions of the steamer, in order to keep up her business, was not within the admiralty jurisdiction, because such advertising was not a service rendered directly to or upon the ship, but belonged to that preliminary class of services rendered wholly on land, and not deemed maritime, and hence not giving rise to a maritime lien.

In my opinion, the contract by the steamboat to procure insurance for the libelants in the consignee's open fire policy does not create a maritime lien, and hence is not within the jurisdiction of a court of admiralty. Nor can a court of admiralty entertain jurisdiction of a libel to reform a policy of marine insurance, nor to enforce the execution of a policy of marine insurance agreeably to the terms of an oral contract. Such reformation or enforcement can only be obtained in a court of equity, upon a bill filed for such purpose. A suit brought upon a policy of marine insurance, where loss occurs outside of the expressed limits of the policy, and where the libel is based upon alleged false and fraudulent representations leading up to the making of the policy, is not within the jurisdiction of a court of admiralty. Such a suit is one based upon false and fraudulent representations, by which the libelant was induced to accept the policy supposing he was insured when he was not. Williams v. Insurance Co., 56 Fed. 159. Under the facts set out in the libel, and supported by the proof, the agreement of the steamboat must be regarded as a contract to procure insurance, or as a false and fraudulent representation or warranty that it had procured insurance; and, in either aspect, it does not disclose a state of facts creating a maritime lien enforceable in rem, within the jurisdiction of a court of admiralty. Whether a libel in personam against the owners would lie it is unnecessary to determine.

The report of the master will be set aside, and the libel dismissed. So ordered.