## F. S. ROYSTER GUANO CO. v. W. E. HEDGER CO., Inc.

No. 296.

Circuit Court of Appeals, Second Circuit.

April 6, 1931.

L. HAND, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the F. S. Royster Guano Company against the W. E. Hedger Company, Inc. Decree for libelant, and respondent appeals.

Single & Single, of New York City (Forrest E. Single and Loring R. Lecraw, both of New York City, of counsel), for appellant.

Charles P. Hickox and Robert S. Erskine, both of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The facts as stated above were not disputed. It is claimed by the libelee, however, that the gist of the action is the breach of a contract to procure insurance of goods to be carried by water, and that such a contract is not cognizable in admiralty. We would have no quarrel with the appellant's version of the law applicable if we could agree that it has comprehended correctly the cause of action in suit. Virginia-Carolina Chemical Co. v. Chesapeake Lighterage & Towing Co. (C. C. A.) 279 F. 684; The City of Clarksville (D. C.) 94 F. 201; Marquardt v. French (D. C.) 53 F. 603.

There was no breach of any contract to procure insurance. On the contrary, insurance quite satisfactory to all concerned was procured and went into effect. That part of the contract was fully performed at New York. When the barges left New York in tow for Toledo, the only portion of the contract still executory on the part of the libelee was the carriage of the rock by water. That this was a maritime contract no one doubts. We are now concerned only with the manner in which the libelee attempted to perform it. Having obtained insurance as agreed, the conditions of that insurance relating to carriage became a part of its contract with the libelant, and it was bound to carry the rock in whatever manner would comply with the terms of the insurance policy it had chosen. When the rock left New York, the libelant had the express promise of the libelee to tow it to Toledo, and the implied promise to tow it on from Buffalo only after inspection had been made as provided in the insurance policy. The requirement to carry with such inspection was not a separate undertaking. Inspection at Buffalo was but an agreed incident of the one and only carriage contract itself, as much so as if the original agreement between the parties had had nothing to do with insurance, but had expressly provided for such an inspection before the rock was exposed to the perils of a lake voyage. Because the continued validity of the insurance in force was dependent upon such inspection, which had become an implied condition of, not a condition precedent to, the carriage, the consequences of a breach of such contractual duty extend to and affect a nonmaritime subject embraced in the original contract which included both a maritime agreement to carry goods and a nonmaritime agreement to place insurance upon them. When the nonmaritime agreement to procure insurance was performed at New York, there remained to be performed only a purely maritime contract, which had for one of its requirements inspection at Buffalo. The subject-matter of the contract itself, rather than the effect of its breach, is the test by which the nature of the agreement is to be determined, and the only obligation the libelee is charged with having failed to perform is that of carrying the rock by water from New York to Toledo in the manner agreed upon. This manner of carriage was open to whatever agreement the parties saw fit to make so long as no law was violated, and an inspection of boats and cargo before venturing upon the lake at Buffalo is so plainly an aid to the safe carriage of the goods that it cannot be divorced from the transportation of which it was but an incident and held to be the basis of a separate and distinct undertaking which created any new or nonmaritime obligations. This rock and these boats were not to be taken to Buffalo for inspection as the object to be attained, but were to be inspected at Buffalo the better to enable the maritime contract to carry the rock to Toledo by way of Buffalo to be safely performed. Compare Loma Fruit Co. v. International Nav. Co. (C. C. A.) 11 F.(2d) 124, 126, 127; Nash v. Bohlen (D. C.) 167 F. 427.

The District Court held the measure of damages to be "the net loss from destruction of or injury to the cargo," and that is said to be erroneous. There can be no doubt that the libelant lost whatever insurance it could have collected but for the libelee's failure to carry with inspection as agreed. This makes the damages recoverable the same as in cases where there has been a breach of a contract to insure. In such cases liability as the insurer is enforced. Morris v. Summerl, Fed. Cas. No. 9,837; Marquardt v. French (D. C.) 53 F. 603. If the insurance company would have been liable for "the net loss," there was no error in the computation of damages. None of the rock reached its destination. One cargo was an actual total loss. The three other cargoes were necessarily sold at an intermediate port and became a salvage loss. Under these circumstances the correct method of adjustment is to deduct the net amount realized from the sale from the value stated in the policy, and the remainder reflects the compensable loss under the policy. There is no occasion for pro-

ceeding with reference to the rules obtaining in the adjustment of a particular average loss. London Assurance v. Companhia De Moagens Do Barreiro, 167 U. S. 149, 168, 17 S. Ct. 785, 42 L. Ed. 113; La Fonciere Compagnie D'Assurances v. Koons (C. C. A.) 75 F. 110. See Id. [D. C.] 71 F. 978.

■■ It fairly appeared that the libelee represented to the libelant before the trial of the action against the insurance company in the state court, and the president of the libelee testified in that suit, to the effect that the clause in the open policy providing for inspection at Buffalo had been understood and agreed by the libelee and the insurance company to mean inspection of equipment at the beginning of the season rather than inspection on each particular voyage. In reliance upon such representation, the libelant sued the insurance company, and incurred expense in prosecuting that fruitless suit. This expense was apparently incurred in good faith in an attempt to recover insurance which this libelee then insisted was recoverable, and was made necessary by the libelee's breach of its carriage contract. Its reasonable amount is therefore recoverable in an action on the contract. Straus v. Victor Talking Mach. Co. (C. C. A.) 297 F. 791, 811; Chambers v. Upton (C. C.) 34 F. 473; New York State Marine Ins. Co. v. Protection Ins. Co., Fed. Cas. No. 10,216; Town of Duxbury v. Vermont Central Ry. Co., 26 Vt. 751. The evidence tending to show the amount reasonably, necessarily, and actually expended for this purpose was not contradicted. It was sufficient prima facie proof of this element of damage.

Decree affirmed.

L. HAND, Circuit Judge (dissenting).

My brothers agree that if the contract had involved only a promise to procure insurance, and no insurance had been procured, this libel would not lie in the admiralty. There are difficulties in applying this, when such a promise is contained in a general contract of carriage; it imposes upon the shipper the choice of foregoing access to an admiralty court upon the contract of carriage, or of abandoning his right of action on the promise to procure insurance. He can hardly bring two suits on the same contract, and in his suit in the admiralty he cannot by hypothesis include the promise to procure insurance. If I were free, I think I might hold that the promise was merely an incident to the general contract of carriage, and came within the admiralty jurisdiction along with the rest. However, the authorities cited by my brothers are quite in point, and with them I accept the doctrine that one cannot sue in the admiralty upon such a promise, even when so incorporated.

The amended libel here set up no cause of suit upon the breach of the promise to carry, because though it does allege that the goods were not delivered, it does not allege any actionable wrong in that failure. The only breach was in not securing the inspection upon which the continued validity of the coverage depended while on the Great Lakes. That inspection was not part of the performance of the promise to carry; the respondent would not have been liable as carrier, had it failed to get it. Indeed it was no part of any express undertaking at all, but merely an implied part of procuring the coverage. Had the respondent agreed only to take out a policy for the Great Lakes, it appears to me impossible to say that it would have performed merely by getting a certificate from the underwriters, upon whose validity there was an unperformed condition precedent. The promise was not to get a certificate, but insurance; the breach would have been only of that promise. Certainly, it can make no difference that the promise here included insurance on the Barge Canal as well; the breach remained the same, the absence of the stipulated insurance.

Hence I cannot see how this case can be turned into the breach of a contract of carriage, and unless we were prepared to overrule the decisions which hold that a promise to procure insurance contained in such a contract may not be sued on in the admiralty, I cannot concur. None of us is prepared to overrule them.