**CARTER–GREEN–REDD, INC.**

v.

**USS CABOT/DEDALO MUSEUM FOUNDATION, in personam, and the M/V DEDALO, her engines, tackle, appurtenances, etc, in rem.**

**Civ.A. No. 90–3168.**

United States District Court, E.D. Louisiana.

Jan. 31, 1991.

David B. Lawton and Gary Alan Hemphill, Terriberry, Carroll & Yancey, New Orleans, La., for plaintiff.

Derek Anthony Walker, Chaffe, McCall Jose Santiago Canseco, John N. Critchlow, III, and Troy Geary Ingram, New Orleans, La., for defendants.

ROBERT F. COLLINS, District Judge.

This Court is faced with the question of whether an option contract dealing with the lease of a vessel falls within this Court's admiralty jurisdiction. Finding that based on the facts of the instant matter, this Court lacks admiralty jurisdiction, this action is hereby DISMISSED.

Defendant, U.S.S. Cabot/Dedalo Museum Foundation ("Foundation"), has moved this Court for summary judgment in its favor. In the alternative, the Foundation moves this Court for an order of dismissal lifting the arrest of the P.A. DEDALO ("DEDALO") and dissolving the lien on said vessel. Plaintiff, Carter–Green–Redd, Inc. ("Carter"), moves this Court to enter summary judgment in its favor. These motions arise from the failed attempt by the Foundation and Carter to convert the DEDALO into a casino. Because this Court finds that it lacks subject matter jurisdiction over this action, the summary judgment motions are DISMISSED AS MOOT.

BACKGROUND

The following undisputed facts provide the relevant background for the disposition of this matter.

The Foundation was, at all relevant times, the owner and operator of the DEDALO.[1] The Spanish government had previously given the Foundation the DEDALO for use as a museum or other attraction in the New Orleans, Louisiana area. Between late May and early June of 1990,

Carter and the Foundation began a series of negotiations concerning a possible lease by Carter of the DEDALO.

The Foundation and Carter entered into two option agreements. These agreements are dated June 29, 1990 and July 13, 1990. The agreement dated June 29, 1990 states in pertinent part:

"Whereas Carter has agreed to pay the Foundation the sum of $25,000 as an option, and right of first refusal, for a fourteen (14) day period to enter into negotiations to lease the Aircraft Carrier [The P.A. DEDALO] from the Foundation for use as a museum and gambling casino in the Gulfport, Mississippi;

Now therefore, in consideration of the mutual benefit accruing to each party hereto, sufficiency and receipt of which is hereby acknowledged, each party to this agreement agrees as follows:

(1) Contemporaneously with the execution of this document Carter will pay the Foundation the sum of $25,000.00;

(2) If within fourteen (14) days from the execution of this document Carter learns that the lease of the Aircraft Carrier for use as museum and gambling a [sic] casino is against the laws, rules and regulations of the federal government, State of Mississippi, or local governments in Gulfport, Mississippi or the United States Coast Guard, or any other reasonable reason, the Foundation will reimburse Carter the $25,000.00, either in cash or through in-kind services of Blaine Kern Artists, Inc. . . . ." Defendants' Exhibit D.

The July 13, 1990 agreement extends the June 29, 1990 agreement another thirty days. Contemporaneous with the execution of the July 13, 1990 agreement, Carter paid the Foundation $22,000.00.

The foundation used the funds received from Carter to pay bills related to the DEDALO's operations. Neither the terms of the original option nor of the extension required the Foundation to use the funds for any specific purpose.

---

1. The DEDALO is currently under seizure.

Subsequent to the parties' July 13, 1990 agreement, the Spanish government refused to consent to the use of the DEDALO as a casino. Thus, the Foundation was unable to lease the vessel to Carter. Armed with a verified complaint and a bond, Carter obtained a warrant of arrest of the DEDALO. The Foundation now seeks to lift the arrest of the vessel while Carter seeks reimbursement of the $47,000.00.

DISCUSSION

In the instant action, the written contract is clear. However, Carter argues that this Court has admiralty jurisdiction because during the course of the lease negotiations, the Foundation's President, Blaine Kern, informed Carter that the DEDALO was "in desperate need of money for its continued operation." (Memorandum in Opposition to Motion to Lift The Arrest of The P.A. DEDALO And Or for Summary Judgment in Favor of U.S.S. Cabot/Dedalo Museum Foundation at 3). Carter further argues that because the funds were used for such necessaries as seamen's wages, food, and supplies, that it is entitled to maritime lien. In essence, Carter's argument is that because its agent advanced the funds for the purpose of paying expenses related to the vessel's operation and the funds were so used, then Carter is entitled to the status of maritime lienor. The Foundation argues that this Court must look at the terms of the written agreement in order to determine whether admiralty jurisdiction exists. The parties thus disagree as to whether the option agreements are maritime contracts.

■ The interpretation and enforcement of maritime contracts fall within this Court's admiralty jurisdiction. However, "the boundaries of admiralty jurisdiction over contracts have always been difficult to draw." *Richard Bertram & Co. v. The Yacht, WANDA,* 447 F.2d 966, 967 (5th Cir.1971); *see also CTI–Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377 (2d Cir.1982) (precise categorization of contracts that fall under federal courts' admiralty jurisdiction is elusive). "The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." *Bertram,* 447

F.2d at 967. In order for a contract to be maritime, it must relate "to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment, ... or [to] ... the furnishing of services, supplies or facilities to vessels ... in maritime commerce or navigation." *CTI–Container,* 682 F.2d at 379. Thus, for a contract to be considered a maritime contract, the subject matter must be directly related to the operation of a vessel and navigation.

■ The option contract at issue here can only be said to have, at best, a remote or preliminary relationship to issues involving navigation or maritime commerce. An agreement which merely sets the stage and conditions for the possible opening of land-based negotiations is far too remote from navigation or maritime commerce to be labelled as a maritime contract. *See, e.g., F.S. Royster Guano Co. v. W.E. Hedger Co.,* 48 F.2d 86 (2d Cir.), *cert. denied, W.E. Hedger Co. v. F.S. Royster Guano Co.,* 283 U.S. 858, 51 S.Ct. 651, 75 L.Ed. 1464 (1931), which held that while a contract for marine insurance may be a maritime contract, a contract to procure a policy of marine insurance is not. Similar to the procurement of marine insurance, there is nothing peculiar to admiralty about the issues involved in the granting of a business option. Clearly, the contract is one which was made on land to be performed on land, and there is no need or justification for resort to the law of the sea. Such matters can and should be dealt with under state law contract principles.

■ Furthermore, the subject matter of the contract between the Foundation and Carter is not of such a nature that it would give rise to a recognized maritime lien. The clear and unambiguous language of the contract states plainly and simply that the sums totalling $47,000.00 paid by Carter to the Foundation were paid in consideration of the Foundation's granting to Carter an option to enter into negotiations for the lease of the DEDALO. Under basic concepts of contract law, the granting of an option is sufficient consideration in itself to form a binding agreement, indepen-

dent of any corollary agreement. Thus, the only contract at issue here is an agreement to give Carter the exclusive right to enter into negotiations with the Foundation, and, thus, there is no basis for enforcing a maritime lien against the vessel.

Carter alleges that it advanced to the Foundation various sums for necessary items. How the Foundation may or may not have used the funds is beyond the scope of the contract; neither the June 29, 1990 Agreement nor the July 13, 1990 Extension makes any mention of either party's providing crew supplies or other necessary items to the DEDALO. Carter's entire argument is premised on cases which hold that one who "advances" funds to pay for seamen's wages or other necessaries for a vessel is entitled to the status of maritime lienor. The principle that one who advances money for crew necessaries obtains maritime lienor status, arose, understandably, out of those contexts in which the Master or some other party *loaned* or advanced money on the credit of the vessel to pay for crew wages and other necessaries as they became due, with the full expectation that such advances would be repaid and that the vessel would remain liable at all times. In the instant case, the Option Agreements have nothing to do with loans or advances on credit. These agreements, which Carter admits are a true representation of the contract between Carter and the Foundation, expressly refer to the money paid by Carter to the Foundation as payment in consideration of the Foundation's granting an option. The entire issue of how the funds were eventually used by the Foundation is completely irrelevant for purposes of determining whether a maritime lien exists. Clearly, the sums paid by Carter were given as consideration for something it received in return, namely, the granting of an option to lease the vessel. How the Foundation later used the money which it received in exchange for the option is simply of no consequence in determining the parties' rights under the contract. This Court must focus its attention on the subject matter of the contract at issue. Moreover, under the Parol Evidence Rule, Carter may not introduce any evidence to contradict the clear, unambiguous terms of the two agreements. The Parol Evidence rule is generally defined as follows:

> When parties have made a contract and have expressed it in writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735 (2d Cir.1975) (*citing* 3A. Corbin, *Contracts*, § 573 at 357 (1960)).

Thus, the clear, unambiguous terms of the written Agreement and Extension are the only evidence which the Court should consider in evaluating the contract between the Foundation and Carter.

In light of the above discussion, it is clear that admiralty jurisdiction is not present. The option contracts in question are not maritime contracts, because they are not directly related to the operation of a vessel or navigation. Thus, this Court must DISMISS the plaintiff's claims for lack of subject matter jurisdiction and, accordingly, lift the arrest of the DEDALO.

The Foundation also requests that this Court impose sanctions on Carter for the harm occasioned by the wrongful arrest of the DEDALO. The Court cannot dispose of these issues without additional briefs. Therefore, it is ORDERED that the Foundation submit a memorandum on the basis for granting the type of sanctions requested, and the expenses, if any, that the seizure of the DEDALO has imposed on the Foundation. Said memorandum must be submitted to the Court within ten (10) days of entry of this Order.