## UNITED FRUIT CO. v. UNITED STATES SHIPPING BOARD MERCHANT FLEET CORPORATION.

### No. 3254.

District Court, D. Massachusetts.

May 29, 1930.

Storey, Thorndike, Palmer & Dodge, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and A. Chesley York, Asst. U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is an action of contract, brought in the state court against the United States Shipping Board Merchant Fleet Corporation and removed to this court.

The case is presented upon defendant's motion to dismiss, which followed closely

upon the opinion in Johnson v. United States Shipping Board Emergency Fleet Corporation, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451. The question involved is whether, under that decision, this court as a court of law has jurisdiction to entertain the suit.

In Johnson v. United States Shipping Board Emergency Fleet Corporation, supra, the court dealt with four actions at law, two of which were brought in the state court and removed to the federal court, and two of them were brought originally in the federal court. Each was brought to recover damages for a maritime tort. The court held that the Suits in Admiralty Act (USCA tit. 46, §§ 741, 742) provided the exclusive remedy, and that such actions at law, either in the state or federal court, would not lie against the United States or against the United States Shipping Board Emergency Fleet Corporation, the name of which has now been changed to the United States Shipping Board Merchant Fleet Corporation.

The pertinent provisions of section 742 (46 USCA) are as follows:

"§ 742. *Libel in Personam.* In cases where if such vessel were privately owned or operated, * * * a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation. * * * "

It is the contention of the plaintiff that the provisions of the Suits in Admiralty Act do not apply to the case at bar for two reasons: (1) That the contract declared upon was nonmaritime and no proceedings in admiralty could have been maintained upon it if the vessels had been privately owned or operated; and (2) that, if the contract should be held to be maritime, it was of such a character that it did not give rise to maritime causes of action such as are covered by the Suits in Admiralty Act.

The first question, therefore, to be considered is whether the contract upon which the action is brought is maritime or nonmaritime. The declaration contains ten counts. The causes of action set out in counts 1 to 9 are based upon a certain agreement called an "operating agreement," whereby the plaintiff was appointed agent for the operation of three steamers owned by the defendant, namely, the Lake Weir, the Bayou Teche, and the Pascagoula.

The first three counts are alike, except that each deals separately with one of the three steamers. The same is true of counts 4, 5, and 6, and counts 7, 8 and 9. Therefore counts 1, 4, and 7 may be taken as illustrating the nature of the first nine counts. Count 10 is based upon a separate agreement relating to all of the steamers.

In the first count of the declaration, as amended, it is alleged that on June 12, 1919, the plaintiff entered into an agreement with the defendant whereby the defendant assigned the Lake Weir to the plaintiff for operation; that the plaintiff undertook to operate the steamer as agent for the defendant, issuing bills of lading in its own name, and in general assuming the obligations of a carrier of freight; "that by said agreement it was provided that the defendant, among other things, should man, equip and supply the said steamer, pay all wages and fees of the master, officers and crew, and exercise due diligence to maintain the said steamer in a thoroughly efficient state in hull, tackle, apparel, furniture and equipment, and the defendant agreed to maintain the said steamer in a seaworthy condition in all respects for the carriage of general cargo including potatoes. * * * * " A copy of the agreement is annexed to the amended declaration. The plaintiff then goes on to allege in this count that, in the spring of 1919, it was authorized and directed by the defendant to use said steamer for the carriage of general cargo, including potatoes, from Boston to Havana, and that, pursuant to such authorization and direction, the steamer sailed on May 15, 1919, from Boston to Havana, carrying a cargo of potatoes, shipped by various individuals and corporations under bills of lading issued by the plaintiff in its own name; that the steamer was not seaworthy, although it might have been made seaworthy by the exercise of due diligence on the part of the defendant, which due diligence it failed to exercise, as a result of which failure the potatoes were damaged; that the shippers brought actions against the plaintiff, and the defendant was notified to come in and defend; that the defendant failing so to do, the actions were finally compromised by the payment of a stipulated amount to the shippers; and that the defendant owes the plaintiff the amount paid in settlement.

The fourth count contains a recital of substantially the same allegations, but in this

count plaintiff bases its claim upon the defendant's alleged agreement to reimburse the plaintiff for all disbursements properly incurred by it in the operation of the vessel.

In the seventh count the claim is based upon an alleged agreement on the part of the defendant to pay to the plaintiff a small commission for its services as operating agent and to reimburse it for any expense incurred in the performance of such services.

To briefly recapitulate the three distinct claims made against the defendant respecting the steamer Lake Weir, it appears that the plaintiff alleges in count 1 a breach in the defendant's contractual obligation to maintain the steamer in a seaworthy condition, in count 4 a breach in the defendant's contractual obligation to reimburse the plaintiff for any disbursements made by it in operating the steamer, and in count 7 a breach of defendant's contractual obligation to pay the plaintiff all expenses properly incurred by it in the performance of the service. The only remaining count in the declaration is count 10, which is based upon an alleged breach by the defendant of an independent agreement to cause the plaintiff to be insured and to be kept insured against liability to shippers for cargo damage.

Thus it appears clearly that the plaintiff, in the first nine counts of its declaration, is seeking to recover damages for alleged breach of a written agreement relating to the use and operation of three vessels owned by the defendant, and in the tenth count is seeking to recover damages for breach of some promise, whether written or oral does not appear, obligating the defendant to procure insurance against the events complained of.

■ If these causes of action are not of a maritime nature, the admiralty court is without jurisdiction. It has long been settled that the admiralty jurisdiction in matters of contract is limited to those, and those only, which are maritime. The Steamboat Orleans v. Phoebus, 11 Peters, 175, 183, 9 L. Ed. 677.

■ It is equally well settled that a contract, in order to come within the admiralty jurisdiction, must be wholly maritime. Grant v. Poillon, 20 How. (61 U. S.) 162, 15 L. Ed. 871; The Ada (C. C. A.) 250 F. 194; The Pennsylvania (C. C. A.) 154 F. 9.

■ This latter rule, however, seems to be subject to at least two modifications: First, that, if the nonmaritime feature is only incidental and relatively unimportant, it will not defeat jurisdiction. "If a contract is maritime in itself it carries all the incidentals with it and the latter, though non-maritime in themselves, will, unless separable, be heard and decided." Benedict on Admiralty (5th Ed.) § 62; Union Fish Co. v. Erickson (C. C. A.) 235 F. 385, affirmed 248 U. S. 308, 39 S. Ct. 112, 63 L. Ed. 261; North Pacific Steamship Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U. S. 119, 39 S. Ct. 221, 222, 63 L. Ed. 510.

■ The second exception apparently is the case of a contract both maritime and nonmaritime which is capable of being divided so that the maritime contract may be separately adjudicated. Compagnie Francaise, etc., v. Leon Bonnasse et al. (C. C. A.) 19 F. (2d) 777, 779.

In that case Learned Hand, Judge, said: "A contract both maritime and non-maritime is ordinarily indivisible, so that the rights of the parties cannot be adjusted separately, those maritime in the admiralty, and the rest elsewhere. Admiralty must refuse to assume any jurisdiction over it at all, because it must either ignore the principles of the law of contract, or extend its powers beyond their constitutional scope. But in so far as the maritime obligations may, consistently with those principles, be separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto. This is clearly intimated in Turner v. Beacham, Fed. Cas. No. 14,252, and The Pennsylvania, 154 F. 9 (C. C. A. 2), though the decisions did not require such a holding. The mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest."

Are the causes set out in plaintiff's declaration of such a nature that they may be held to be wholly maritime within the declared doctrine of the courts? What is the test?

In North Pacific S. S. Co. v. Hall Bros. Marine Ry., etc., Co., supra, Mr. Justice Pitney for the court lays down this rule: "It must be taken to be the settled law of this court that while the civil jurisdiction of the admiralty in matters of tort depends upon locality, whether the act was committed upon navigable waters, in matter of contract it depends upon the subject-matter, the nature and character of the contract, and that the English rule, which conceded jurisdiction, with a few exceptions, only to contracts made and to be executed upon the navigable waters, is inadmissible; the true criterion being

the nature of the contract, as to whether it have reference to maritime service or maritime transactions." And Benedict, in his work on Admiralty, observes that "the dividing line between causes maritime and nonmaritime, is not always strongly marked. It is believed that a sure guide, in matters of contract, is to be found in the relation which the cause of action has to a ship, the great agent of maritime enterprise, and to the sea as a highway of commerce. A contract relating to a ship in its use as such or to commerce on navigable waters is subject to the maritime law and the case is one of admiralty and maritime jurisdiction, whether the contract is to be performed on land or water." Benedict on Admiralty (5th Ed.) § 63; The Belfast, 7 Wall. 624, 19 L. Ed. 266; New England Marine Ins. Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90.

With these criteria in mind, we may now examine more closely the subject-matter of the agreement declared upon. In this agreement the defendant appoints the plaintiff as its agent for the operation of the vessel named in the contract. The stipulations to be performed by the plaintiff were, to operate, as such agent, the vessel as the defendant should direct, subject to its orders as to voyages, cargoes, priorities, charters, rates of freight, etc.; to provide fuel, water, stevedoring, and certain other charges for commission, etc., except those pertaining to the master, officers, and crew; to issue bills of lading which should contain stipulated provisions limiting liability; to collect and account for all freights; and to comply with certain requirements respecting the manner in which these/ duties should be performed.

The defendant agreed to "man, equip, victual and supply the vessel, provide and pay for all provisions, wages, consular, shipping and discharging fees of the master, officers and crew and all cabin, deck and engine room and other necessary stores and to exercise due diligence" in maintaining the steamer named in the contract "in a thoroughly efficient state in the hull, machinery, tackle, apparel, furniture and equipment for and during service." It agreed to pay the plaintiff compensation and all commissions and fees as stipulated in the contract, and to reimburse the plaintiff for all disbursements, properly incurred on its behalf, as authorized in the agreement.

The plaintiff argues that, while the contract in question was called an "operating agreement," the term was really a misnomer, as the plaintiff did not control the navigation of the steamer in any sense and was hardly more than an agent for the solicitation of cargo, issuing bills of lading, and for the collection of freight.

If the plaintiff had been a charterer and was suing for breach of the charter party, there could be no question about the nature of the defendant's obligations. Clearly they would have been maritime. It is difficult for me to discover any distinction in principle between the case at bar and the case supposed. Conceding that the plaintiff operated the vessels as the agent of the defendant and subject to its directions as to voyages, cargoes, etc., it nevertheless remains true that the plaintiff is endeavoring to enforce its rights against the owner of the vessels for failure to fully perform its agreements to use due diligence in maintaining the vessels in a seaworthy condition and to pay the expenses incurred by plaintiff in the operation thereof under the contract. I cannot escape the conclusion that these agreements have a direct relation to a ship engaged in commerce on navigable waters.

It seems to me that the contract was something more than an agreement to indemnify the plaintiff for any loss which it might incur in the operation of the vessel as agent. The promises which, according to the allegations, the defendant has broken, are promises to do certain things which have a direct bearing upon the operation of the vessel, and the contract, in my opinion, would be none the less maritime because the vessels were operated by the plaintiff, subject to the control of the defendant. The plaintiff received the cargo and issued the bills of lading, and, if it became liable thereon for any injury to the cargo, due to negligent failures for which the defendant was ultimately liable, I do not see how it can be successfully argued that any proceeding to enforce this ultimate liability would not partake of a maritime character within the later maritime doctrine above noted. If there were any stipulations which, standing alone, might be regarded as nonmaritime, it is obvious that they were merely incidental to the main contract which related to the operation of defendant's vessels by the plaintiff as agent.

The tenth count stands on a different ground. It is well-settled law of admiralty that, while a contract of insurance is maritime (New England Marine Ins. Co. v. Dunham, supra), a contract to procure insurance upon a cargo is nonmaritime. The City of

Clarksville (D. C.) 94 F. 201; Marquardt v. French (D. C.) 53 F. 603; Home Ins. Co. v. Merchants' Transport Co. (C. C. A.) 16 F. (2d) 372.

It will be noted that the contract upon which the first nine counts were based does not contain any stipulation by the defendant respecting insurance, and, if the plaintiff supports the allegation of the tenth count, it can only be by showing an entirely independent and separate contract; therefore the nonmaritime character of this count would not affect the maritime character of the causes alleged in the other counts.

The plaintiff's second contention is that, even if the contract sued on was a maritime contract, the case is not within the Suits in Admiralty Act. The ground upon which this contention rests is that the act does not apply to any suit to recover by proceedings in personam unless the cause of action be of such a nature as to be enforceable under normal circumstances by a suit in rem as against a privately owned vessel. In other words, that the Johnson Case goes no farther than to hold that the act furnishes the exclusive remedy where there is, or was, an "offending vessel," so that, under normal circumstances, either a suit in rem or one in personam could be maintained, and that the right to maintain a libel in personam exists in such cases, even though through the destruction of the res there is no basis for libel in rem. I am unable to see the pertinency of this argument.

The defendant is sued as the owner of a vessel, and it is alleged that, because of the unseaworthiness of this vessel, the defendant is liable to respond in damages to the plaintiff by virtue of an agreement relating to the operation of the vessel.

It was said in Eastern Transport Co. v. United States, 272 U. S. 675, 689, 47 S. Ct. 289; 292, 71 L. Ed. 472, that the purposes of the Suits in Admiralty Act would lead to a limitation of the operation of the act to a "proceeding which while in form in personam would be attended only with the incidents of a proceeding in rem as if against a vessel libeled, arrested, and released under a stipulation or bond by the United States to pay all damages." The court, however, was forced by other provisions of the act to the conclusion that such a limitation was not intended by Congress, and that the remedies provided by the act would include the general in personam liability of the United States as the owner of an offending vessel like that of a private owner.

And again, in Johnson v. United States Shipping Board Emergency Fleet Corporation, supra, at page 325, of 280 U. S., 50 S. Ct. 118, 120, the court observes that "the act relieved the United States of the inconvenience resulting from such seizures and gave remedy by libel in personam against the United States and such corporations. Blamberg Bros. v. United States, 260 U. S. 452, 458, 43 S. Ct. 179, 67 L. Ed. 346. But that is not its only purpose. It authorizes libel in personam where there is nothing on which recovery in rem could be had. Eastern Transp. Co. v. United States, 272 U. S. 675, 47 S. Ct. 289, 71 L. Ed. 472. And it furnishes the exclusive remedy in admiralty against the United States and such corporations on maritime causes of action arising out of the possession and operation of merchant vessels."

To interpret this language as meaning that the statute authorizes libel in personam only where a lien would have existed if the res had not been destroyed is, in my opinion, to put too narrow a construction upon the words of Mr. Justice Butler when he stated that the act "authorizes libel in personam where there is nothing on which recovery in rem could be had."

In the notable case of New England Marine Ins. Co. v. Dunham, supra, which was a proceeding in admiralty upon a contract of insurance, it was urged that admiralty could not exercise jurisdiction over contracts of insurance because there is no lien, but the court, in a learned opinion, reached a contrary conclusion, and established the law of this country to be that the admiralty court has jurisdiction to entertain a libel in personam on a policy of insurance insuring against the perils of the sea. Here is in personam liability with nothing on which a recovery in rem could be had.

A contract of affreightment is a maritime agreement, but it has been held that there was no maritime lien against a ship for failure to accept and carry a cargo. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 67 L. Ed. 364.

For other instances of agreements enforceable in admiralty which create no maritime lien against the vessel, see De Lovio v. Boit, Fed. Cas. No. 3776; The Illinois, Fed. Cas. No. 7005; Insurance Company of Pennsylvania v. Proceeds of Barge Waubaushene (C. C.) 24 F. 559; The Wabash (D. C.) 279 F. 921.

It is my conclusion, and I so rule, that the first nine counts of plaintiff's declaration

state maritime causes involving the general in personam liability of the defendant as owner of the vessels named, and that this court is without jurisdiction to entertain this action at law, brought to enforce such maritime liability.

Inasmuch as this court, as a court of law, would have jurisdiction to entertain the cause alleged in the tenth count, the motion to dismiss cannot be granted.

Since the plaintiff has suggested and requested an opportunity to present and argue a motion to transfer the case to the admiralty side of the court, I make the foregoing ruling without prejudice to its rights to take whatever steps it may deem appropriate to transfer the case to the admiralty court, without deciding whether this court has power to make such transfer.