PUERTO RICO MARITIME SHIPPING AUTHORITY, Puerto Rico Marine Management, Inc., Plaintiffs,

v.

LUALLIPAM, INC. and Central Produce El Jibarito, Inc., Defendants.

PUERTO RICO MARITIME SHIPPING AUTHORITY, Puerto Rico Marine Management, Inc., Plaintiffs,

v.

CENTRAL PRODUCE EL JIBARITO, INC., et al., Defendants.

PUERTO RICO MARITIME SHIPPING AUTHORITY, Puerto Rico Marine Management, Inc., Plaintiffs,

v.

AMIGO FOODS CORPORATION, Defendant.

Civ. Nos. 84–2260(RLA), 84–2677(RLA) and 84–2824(RLA).

United States District Court, D. Puerto Rico.

April 7, 1986.

Juan A. López Conway, Jiménez, Graffam & Lausell, San Juan, P.R., for plaintiffs.

Frank J. Costello, Zuckert, Scoutt, Rasenberger & Johnson, Washington, D.C., for Luallipam, Inc.

Jaime Sifre Rodríguez, Cepeda, Sánchez-Betances & Sifre, Hato Rey, P.R., for other defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

These are consolidated actions in admiralty brought by Puerto Rico Maritime Shipping Authority and Puerto Rico Marine Management, Inc. (PRMSA/PRMMI) to collect ocean freight and demurrage charges from various shippers and consignees, defendants herein.[1] Jurisdiction is based upon 28 U.S.C. § 1333. Defendants have contested the admiralty jurisdiction of the Court and have moved for dismissal of the case.

Plaintiffs PRMSA/PRMMI are maritime carriers engaged in the carriage of goods by sea between, among others, ports in the continental United States, Dominican Republic, United States Virgin Islands and Puerto Rico. Defendants are shippers and/or consignees of agricultural produce who at times contract with PRMSA/PRMMI for the carriage by sea of trailer loads of agricultural produce. The rate, terms, and conditions of the contract of carriage between parties is governed by the PRMSA/PRMMI bill of lading issued for each shipment and the applicable tariffs. Plaintiffs complain that defendants have not paid the ocean freight charges for various shipments.

Defendants move for dismissal on the grounds that the carriage of goods by PRMSA/PRMMI is not a maritime transaction and, as such, not within the admiralty jurisdiction of this Court. Defendants advance the argument that the movement of cargo on an intermodal[2] contract of carriage is not a wholly maritime transaction. They identify the carriage of cargo in the case at bar as of a "mixed" nature that involves transportation by land and carriage by water. They recognize that the carriage of goods at hand has a maritime flavor, but contend that it does not predominate since regulation by the Interstate Commerce Commission (ICC), allegedly a non-maritime agency, is indicative of a non-maritime contract. They further allege that the non-maritime portion is so intertwined with the maritime portion that the division of the two portions would not be possible. Lastly, defendants profess that the purposes of admiralty jurisdiction will not be served by extending the jurisdiction to intermodal contracts.[3]

---

1. Plaintiffs brought three separate actions for ocean freight collection against different entities. The actions were consolidated. For the sake of brevity we will refer to all the defendants collectively as "defendants". Whenever reference has to be made to a case in particular, we will refer to the civil number.

2. Intermodal cargo or shipment is cargo or shipment that moves by water and land transportation on a single bill of lading. *Puerto Rico Maritime Shipping Authority v. Federal Maritime Commission*, 678 F.2d 327, 352 (D.C.Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 210, 74 L.Ed.2d 167 (1982).

3. Defendants contend that they have a potential

Plaintiffs have opposed defendants' motion to dismiss and contend that the contracts of carriage are maritime in nature and character. They contend that the maritime nature of the relationship between the carrier and defendants does not cease to be maritime because an agency that regulates interstate transportation of goods has regulatory jurisdiction over particular shipments. They further allege that the majority of the bills of lading were strictly for ocean carriage and only a limited number of the bills of lading sued upon involved land transportation, which in any case was incidental to the ocean segment of the shipment.

■ In general, to invoke admiralty jurisdiction over a contract, the subject matter of that contract must be wholly maritime, i.e., it must directly concern navigation or commerce on navigable waters. *Insurance Company v. Dunham*, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1870); *Tropwood, A.G. v. Tae Chang Wood Industry Co. Ltd.*, 454 F.Supp. 964 (N.D.Ill.1978). A wholly maritime contract is a contract whose principal subject matter is maritime and gives character to the whole. *Pillsbury Flour Mills Co. v. Interlake S.S. Co.*, 40 F.2d 439, 440 (2d Cir.1930). A contract to transport goods by sea concerns commerce on navigable waters and, as such, is wholly maritime. *H. Liebes & Co. v. Klengenberg*, 23 F.2d 611 (9th Cir.1928); *The Ciano*, 63 F.Supp. 892 (E.D.Pa.1945); *see generally*, I *Benedict On Admiralty* § 183, pp. 1–6 (1985).

■ However, a "mixed" contract which consists of maritime and non-maritime elements may be cognizable in admiralty. Maritime jurisdiction will attach if the non-maritime elements of the agreement are incidental to the maritime elements, or if the non-maritime elements are separable from the maritime elements. *See, Flota Maritima Browning de Cuba v. Snobl*, 363 F.2d 733, 735 (4th Cir.), *cert. denied*, 385 U.S. 837, 87 S.Ct. 82, 17 L.Ed.2d 1 (1966). As stated in *United Fruit Co. v. U.S. Shipping Board Merchant Fleet Corp.*, 42 F.2d 222 (D.Mass.1930):

It is equally well settled that a contract, in order to come within the admiralty jurisdiction, must be wholly maritime. This latter rule, however, seems to be subject to at least two modifications: First, that, if the non-maritime feature is only incidental and relatively unimportant, it will not defeat jurisdiction. "If a contract is maritime in itself it carries all the incidentals with it and the latter, though non-maritime in themselves, will, unless separable, be heard and decided." The second exception apparently is the case of a contract both maritime and non-maritime which is capable of being divided so that the maritime contract may be separately adjudicated.

*Id.* at 224 (citations omitted).

■ With these principles at hand, we analyze defendants' contentions that the intermodal bills of lading are not maritime contracts, bearing in mind that the character, nature and subject matter of the contract are determinative of the question of whether the contract of carriage is maritime. *Hinkins S.S. Agency, Inc. v. Freighters, Inc.*, 498 F.2d 411 (9th Cir. 1974).[4]

In the case at bar PRMSA/PRMMI carried goods for defendants under tariffs on file with the Federal Maritime Commission (FMC) and ICC.[5] Upon acceptance of the cargo from defendants, PRMSA/PRMMI issued a bill of lading for each shipment.

counterclaim which allegedly will depend on the application of ICC tariffs. We shall not consider this additional contention since it is not before the Court inasmuch as defendants have not filed a counterclaim or answered the complaint.

4. The rule is different in maritime tort cases where the locality of the tort plus the maritime nature of the activity are determinative of admiralty jurisdiction. *Executive Jet Aviation Inc. v.*

*City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).

5. PRMSA's bill of lading is on file with both the ICC and FMC. See PRMSA's Tariff No. 100, ICC PRMMI 100, Bill of Lading Tariff, PRMSA Tariff FMC–F 104 and FMC No. 2 Bill of Lading Tariff.

It is undisputed that the bill of lading, together with the incorporated freight tariff, contains the terms and conditions of the contract of carriage. Defendants are only contesting the maritime character of those intermodal bills of lading which are subject to the jurisdiction of the ICC and, thus, incorporate the terms and conditions of the tariff on file with the ICC. *See, Puerto Rico Maritime Shipping Authority v. ICC,* 645 F.2d 1102 (D.C.Cir.1981); *Trailer Marine Transport Corp. v. Federal Maritime Comm.,* 602 F.2d 379 (D.C.Cir.1979); *Maryland Port Administration v. SS American Legend,* 453 F.Supp. 584 (D.Md. 1978).

The bills of lading sued upon by plaintiffs fall into three categories. First, there are bills of lading which cover only ocean carriage between ports in Puerto Rico and ports in the United States Virgin Islands and the Dominican Republic. These bills of lading are subject to FMC jurisdiction and correspondingly incorporate tariffs on file with the FMC. The jurisdiction of this Court over this first category of bills of lading is not in dispute.

■ Second, there are bills of lading which cover ocean carriage between the ports of Baltimore, Maryland; Charleston, North Carolina; Elizabeth, New Jersey; Jacksonville, Florida; and New Orleans, Louisiana, and ports in Puerto Rico and the United States Virgin Islands. These bills of lading incorporate tariffs on file with the ICC. These routes involve only ocean transportation. The wholly maritime nature of these contracts for ocean carriage of goods is beyond question. The only issue raised by defendants is the incorporation in the bills of lading of a tariff on file with the ICC, allegedly a non-maritime agency.

In general terms, admiralty jurisdiction extends to contracts which are wholly maritime. This determination in turn is based, as we have stated, upon the character, nature and subject matter of the contract. Defendants have not cited any statutory or case law, nor have we been able to find any, which supports their contention that transportation contracts falling under the jurisdiction of the ICC are *ipso facto* non-maritime. This is so because the Interstate Commerce Act, as amended, regulates certain aspects of carriage of cargo by water. *See,* 49 U.S.C. §§ 10101–11917.

We note that in *Puerto Rico Maritime Shipping Authority v. ICC, supra,* 645 F.2d at 1112, and *Trailer Marine Transport Corp. v. Federal Maritime Comm., supra,* 602 F.2d at 393, the Court addressed the jurisdictional boundaries of the ICC and FMC based upon the relevant statutes without reference to the maritime or non-maritime nature of the regulated activity. We hold that, under the circumstances before us, a contract does not necessarily cease to be maritime simply because it falls under the jurisdiction of the ICC.

■ Finally, there are bills of lading which cover land and ocean transportation from the terminal ports of Philadelphia, Pennsylvania; Boston, Massachusetts; Fort Lauderdale, Florida; Miami, Florida; West Palm Beach, Florida; Houston, Texas; Port Arthur, Texas; and Lake Charles, Louisiana; to the port of San Juan, Puerto Rico. As these "terminal point ports" do not receive direct service from PRMSA/PRMMI vessels, the transportation from these "terminal point ports" to plaintiffs' terminals in the ports that receive direct vessel service is provided by motor carriers engaged by PRMSA/PRMMI in prior agreements.[6] The cost of the land transportation, where required, is absorbed by plaintiffs with no increase in the quoted ocean freight. A review of the relevant tariff provisions filed in support of plaintiffs' opposition to defendants' motion to dismiss confirms this fact.[7]

The question is whether the bills of lading covering combined land and water transportation contracts ("intermodal") are maritime. From the above discussion, it is

---

**6.** See Item 2 of ICC PRMMI Tariff No. 205.

**7.** See plaintiffs' opposition to defendants' motion to dismiss, p. 4 (Docket No. 17 in Civil No. 84–2260).

clear that the maritime nature of the transaction between the parties predominates over the land transportation. The main consideration of the bills of lading is the carriage by sea of defendants' cargo to Puerto Rico, an island. The bills of lading were issued by an ocean carrier, PRMSA/PRMMI, and not by a land carrier. Furthermore, the bills of lading incorporate maritime legislation and maritime terms. *E.g.,* Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315.

In addition, the land portion of the shipment is incidental to the ocean carriage. The land transportation from the "terminal point ports" to those ports serviced by PRMSA/PRMMI vessels came about as a substitute for unprofitable operations in ports with a low volume of cargo. The cost of the land transportation is absorbed by the ocean carrier.

Moreover, the bills of lading were issued in furtherance of maritime commerce. The parties herein have engaged in an ongoing business relationship of ocean carriage of goods to Puerto Rico and the United States Virgin Islands. This is evidenced by the number of voyages that originated in ports that receive direct service from PRMSA/PRMMI vessels. Nothing in the record before us suggests that the land portion of the transportation contract predominated or was the principal consideration of the contract.[8] We, therefore, find these bills of lading to be wholly maritime contracts of ocean carriage within the admiralty jurisdiction of this Court.

There is abundant case law concerning maritime contracts of carriage with land transportation portions which are, as in the case at hand, clearly incidental to the ocean carriage. *See, e.g., Austracan (U.S.A.) v. Neptune Orient Lines, Ltd.,* 612 F.Supp. 578, 585 (S.D.N.Y.1985) (admiralty jurisdiction over contract of carriage involving ocean carriage from the Philippines to California and land transportation from California to New Jersey; defines "house to

pier," "pier to house," "house to house," and "door to door" shipments, all of which involve land transportation); *Sklut Hide and Furs v. Prudential Lines, Inc.,* 537 F.Supp. 266 (D.Del.1982) (admiralty jurisdiction over contract of carriage involving the land transportation necessary to provide "house to house" service).

In other situations where courts have found intermodal transportation contracts to be non-maritime, the land transportation portion of the contract was either considerable, *e.g., Kuehne & Nagel (A.G. & Co.) v. Geosource, Inc.,* 625 F.Supp. 794 (S.D.Tex. 1986) or was the very *raison d'etre* of the transportation contract, *e.g., Alaska Barge and Transport, Inc. v. United States,* 373 F.2d 967, 179 Ct.Cl. 216 (1967) (delivery of military equipment to an inland site over rugged terrain). *Cf., Luvi Trucking, Inc. v. Sea-Land Service, Inc.,* 650 F.2d 371 (1st Cir.1981) (a pure trucking contract with no portion covering water transportation).

In view of the foregoing, defendants' motions to dismiss for lack of subject matter jurisdiction are hereby denied. Defendants shall file their answer to the complaint on or before April 21, 1986.

Trial is hereby set for March 5, 1987, at 9:30 a.m. These cases are hereby referred to the United States Magistrate for scheduling of a discovery timetable and pretrial conference in accord with the trial date.

IT IS SO ORDERED.

---

**8.** For the same reasons we find the demurrage claims are properly before the Court. *Gulf* *Puerto Rico, Inc. v. Associated Food,* 366 F.Supp. 631 (D.P.R.1973).