IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 91-2919

Summary Calendar

---

LUCKY-GOLDSTAR, INT'L (AMERICA) INC.,

Plaintiff-Appellee,

versus

PHIBRO ENERGY INTERNATIONAL, LTD.,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(March 25, 1992)

Before GARWOOD, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Phibro Energy International appeals an adverse judgment in a bench trial of a suit for breach of contract for the sale of goods and their transport by sea filed by Lucky-Goldstar International, Ltd. Phibro contends that the district court erred in striking its demand for jury trial, because it had diversity jurisdiction, not maritime jurisdiction. We agree and reverse and remand for further proceedings.

## I.

LGI agreed to purchase from Phibro approximately 1,000 metric tons of toluene, a petroleum by-product. Phibro agreed to ship the toluene by sea to Singapore between November 1 and November 15, 1990, in a vessel of its nomination and to insure that the toluene was not commingled with other goods. Title would pass to the buyer as the toluene passed the ship's flange in the United States.

LGI contended that shipment was six days late and that the toluene became commingled with another parcel. LGI filed this suit against Phibro for breach of contract. Phibro demanded a jury trial. The court granted LGI's motion to strike the jury demand because, in its view, the contract was "overwhelmingly maritime in its general nature." Following a bench trial, the district court granted judgment to LGI.

## II.

To support admiralty jurisdiction in a suit for breach of contract, the underlying contract must be wholly maritime. 1 Benedict on Admiralty § 183 at 12-10 (7th Ed. 1991). Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283, 290 (5th Cir. 1989). This contract was not, beyond cavil. A principle purpose of the contract was the land-based sale of over a thousand metric tons of toluene. It is well-established that such a sale of goods by itself would not be "maritime" merely because the seller agrees to ship the goods by sea to the buyer. Armour & Co. v. Fort Morgan Steamship Co., 270 U.S. 253, 259 (1926) ("The original contract to purchase, assemble, and sell the cattle, to charter vessels and

2

therein transport the cattle to Jacksonville, and the agreement of compromise, are not maritime contracts"); Laredo Offshore Constructors, Inc. v. Hunt Oil Co., 754 F.2d 1223, 1231-32 (5th Cir. 1985) ("It is fundamental that the mere inclusion of maritime obligations in a mixed contract does not, without more, bring non-maritime obligations within the pale of admiralty law"); Luckenbach S.S. Co. v. Gano Moore Co., 298 F. 343, 344 (2d Cir. 1924) (L. Hand, J.), rev'd in part on other grounds, 298 F. 344 (2d Cir. 1924) ("Nor is it possible to treat a contract of sale as maritime even though its performance involves the carriage of goods on the seas to the place of delivery. . . . In such matters, the whole contract must be maritime in its character, and, when the performance is partly maritime and partly terrene, a court of admiralty will not assume jurisdiction over it, unless the nonmaritime features be inconsiderable").

A "mixed" contract containing both maritime and non-maritime elements may yet be a basis for maritime jurisdiction if either of two circumstances exist. First, if the character of the contract is primarily maritime and the non-maritime elements of the contract are incidental, the incidental non-maritime aspects of the contract will not defeat admiralty jurisdiction. Kuehne & Nagel, 874 F.2d at 290. Second, if a contract's maritime obligations are separable from its non-maritime aspects and can be tried separately without prejudice to the other, admiralty jurisdiction will support trial of the maritime obligations. Id.; Jack Neilson, Inc. v. the Tug Peggy, 428 F.2d 54, 60 (5th Cir. 1970).

3

This contract fits neither of these two circumstances for "mixed" contracts. Its non-maritime aspect is the land-based sale of the toluene. The agreement to sell is not "incidental" to the agreement to deliver. These cases can but this case does not present a chicken and egg puzzle. Delivery was not necessary to a sale and the buyer took title as the product crossed the ship flange at the load port. As we explained, it is not the case that every contract for sale of goods requiring the seller to arrange seaward shipment is a maritime contract.

We are not persuaded that the maritime aspects of this contract are sufficiently separable for trial in admiralty without prejudice to Phibro's right to try the non-maritime aspects to a jury. The contract itself draws no such distinction. The buyer is to pay $640.00 per metric ton without allocation of the cost of shipping. LGI filed a single claim for breach of contract, with no contention that it sued to recover only for the breach of the maritime aspects of the contract. Indeed, the contract also provided that it would be governed by the law of the state of New York. Nor did the damages and breach urged relate only to the shipping terms. Phibro urged that LGI breached the contract by not abiding modifications of the contract regarding shipping dates.

Curiously, LGI argues to us that "the sale itself was inseparable from the maritime obligations." The contention is that, where the maritime and non-maritime aspects of a contract are inseparable, the admiralty court may try the entire claim for

4

breach of contract.  LGI relies on this court's decision in Rex Oil, Ltd. v. M/V Jacinth, 873 F.2d 82, 86 (5th Cir. 1989).

Rex Oil recited that "where nonmaritime elements are inseparable from maritime elements," a district court could exercise maritime jurisdiction, taking the language of Puerto Rico Maritime Shipping v. Luallipam, Inc., 631 F. Supp. 1472, 1474 (D. Puerto Rico 1986).  Yet, Puerto Rico Maritime Shipping states that "maritime jurisdiction will attach if the non-maritime elements of the agreement are incidental to the maritime elements, or if the non-maritime elements are separable from the maritime elements." Id. (emphasis added).

Rex Oil replaced the word "separable" with "inseparable" and thus inadvertently misstated the precedent it was attempting to apply.  It is contrary to the long-held and established jurisprudence in this and other circuits, and common sense, as yet not a complete  stranger to our jurisprudence. See Jack Neilson, Inc. v. The Tug Peggy, 428 F.2d 54, 60 (5th Cir. 1970); D.M. Picton & Co. v. Eastes, 160 F.2d 189, 192 (5th Cir. 1947); Berwind-White Mining Co. v. Cit of New York, 135 F.2d 443, 447 (2d Cir. 1943); Compagnie Francaise De Navigation A Vapeur v. Bonnasse, 19 F.2d 777, 779 (2d Cir. 1927), cert. denied, 275 U.S. 551 (1927) (Learned Hand, J.).

Because it is contrary to earlier Fifth Circuit precedent of Jack Neilson, Inc. v. the Tug Peggy, 428 F.2d 54, 60 (5th Cir. 1970), we are not bound by Rex Oil.  Under the law of this circuit,

5

the earlier panel opinion controls.  <u>Alcorn County, Mississippi v. U.S. Interstate Supplies</u>, 731 F.2d 1160, 1166 (5th Cir. 1984).

The district court erred in asserting maritime jurisdiction over this non-maritime contract.  We reverse the judgment entered against the defendant and remand for proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.