# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 29, 2010

Lyle W. Cayce
Clerk

No. 09-30804

ALPHAMATE COMMODITY GMBH,

Plaintiff – Intervenor – Defendant – Appellant

v.

CHS EUROPE SA; CHS INC.,

Intervenor Plaintiffs – Appellees

v.

FOOD, a Certain Consignment of Yellow Corn Laden
aboard the M/V Golden Star,  quasi in rem

Defendant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR, District
Judge.[*]

EDITH H. JONES, Chief Judge:

Alphamate Commodity GMBH sought and obtained a Rule B maritime
attachment in New Orleans, Louisiana, on a shipment of corn that had been
loaded on the M/V GOLDEN STAR bound for Green Valley for Animal Feed

[*]District Judge of the Northern District of Texas, sitting by designation.

Libya ("AFL")[1] in Tripoli, Libya.  Alphamate was owed money by AFL. Immediately following this ex parte order, the corn seller, CHS, Inc., and its affiliate, CHS Europe (collectively, "CHS" or "Appellees"), intervened and moved to vacate the attachment.[2]  Appellees contended that they owned the corn because under the contract between CHS and AFL, title transferred upon payment, which had not occurred.  The district court agreed with CHS on the merits and vacated the attachment.  Alphamate appeals.

We hold that the district court lacked maritime jurisdiction over the dispute between AFL and Alphamate.  Their contracts for sales of grain are not wholly maritime, nor are the demurrage and detention charges suffered by Alphamate severable from the alleged breaches of their sales contracts.  The court did not have the power to issue a Rule B maritime attachment.  Therefore, the judgment is vacated and the case remanded for further proceedings.

## I.  BACKGROUND

Alphamate is a German international grain merchant.  AFL, a Libyan company, entered three contracts with Alphamate to purchase grain from Europe.  AFL failed to issue timely and satisfactory letters of credit as required by their contracts and, as a result of AFL's failure to complete its purchases, Alphamate claimed approximately $8 million in damages, including $3 million in demurrage charges and $1 million in unpaid detention.  Alphamate has been arbitrating these contractual disputes with AFL at the Grain and Feed Trade Association ("GAFTA") based in London.

In an attempt to recover its losses, Alphamate sought a Rule B maritime attachment against a shipment of corn aboard the M/V GOLDEN STAR berthed in Louisiana.  The corn was being sold by CHS to AFL pursuant to an

---

[1]AFL is also known as Elshahel Alakhdar for Animal Feed Libya.

[2]AFL has not appeared in this litigation.

independent contract. While the Rule B attachment proceeding was pending in district court, AFL had not paid CHS, nor had CHS received a bill of lading.

On July 18, 2009, the district court approved Alphamate's ex parte application and issued the writ of attachment. On July 21, Appellees moved to intervene, asserting that because title had not transferred to AFL and they remained the rightful owners of the corn, Alphamate had no right to attach Appellees' property. On July 23, Alphamate posted a corporate surety bond for $250,000 as security for costs. On July 27, the district court held a Rule E(4)(f) hearing and concluded that CHS retained title to the corn:

> I find that title has not passed on CHS. Under both the custom and usage recognized by the Fifth Circuit in *POLLUX*, the applicable English law, there is no passing title until payment. Payment has not been made; therefore, I am vacating the previously issued attachment. I am granting the motion to vacate attachment and release cargo filed by CHS.

The M/V GOLDEN STAR left port and presumably delivered the corn to AFL in Africa. Alphamate's appeal to this court dwells on whether title to the corn had passed to AFL under English law after it was loaded on the vessel. Appellees, however, raise threshold mootness and jurisdictional issues that we must discuss first.

## II. MOOTNESS

As an initial matter, Appellees assert that the case is moot because the corn has been transported outside the jurisdiction and Alphamate has no claim against the Appellees personally. We review mootness *de novo*. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524-25 (5th Cir. 2008). An appellate court normally retains jurisdiction over an *in rem* or *quasi in rem* dispute even if the property in question leaves the jurisdiction. *Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 87-88, 113 S. Ct. 554 (1992). Appellate courts retain jurisdiction "in any case where the judgment will have *any effect whatever*." *Id*. at 85 (citing *United States v. The Little Charles*, 26 F.

Cas. 979 (C.C.D.Va. 1818) (No. 15,612)) (emphasis added).  A judgment is not "useless" simply because the court is unable to order property returned to the successful litigant.  *Elliot v. M/V Lois B*, 980 F.2d 1001, 1005 (5th Cir. 1993).  A judgment is useless only if there is no chance that it will provide "concrete value" to the successful litigant.  *Id.*

Here, Alphamate posted a $250,000 bond as security against any charges, including demurrage and detention charges CHS owed to the M/V GOLDEN STAR, that might be imposed by the court in the event the attachment was unsuccessful.  Appellees are seeking such damages in the district court.  Which party receives the benefit of the security is an issue that renders the case still a live controversy.

## III.  JURISDICTION

Appellees also contend that federal admiralty jurisdiction is lacking because the underlying dispute between AFL and Alphamate is not maritime.  Consequently, Alphamate could not assert a *prima facie* admiralty claim against the defendant.[3]  A Rule B maritime attachment is a remedy available only under a court's admiralty jurisdiction.  *See* FED. R. CIV. P. 9(h) (Supplemental Rules for Admiralty or Maritime Claims are limited to claims for relief "within the admiralty or maritime jurisdiction"); FED. R. CIV. P., SUPP. R. A(1)(A) ("These Supplemental Rules apply to the procedure in admiralty and maritime claims within the meaning of Rule 9(h) . . . .").  "Neither Rule B nor any other of the Supplemental Rules create 'a valid prima facie admiralty claim.'  Rather, the Supplemental Rules fashion procedures by which a valid maritime claim may form the basis for a writ of maritime attachment."  *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007).  "A party may only seek Rule B attachment if the underlying claim satisfies admiralty

---

[3]The Appellees did not make this argument at the Rule E(4)(f) hearing before Judge Zainey and conceded jurisdiction at that time.  Nevertheless, the court must always consider jurisdiction whether it was timely raised below or not.

jurisdiction under 28 U.S.C. § 1333." *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 594 F.3d 681, 687 (9th Cir. 2010).[4] If the underlying dispute or claim does not fall within admiralty jurisdiction, the court lacks the authority to issue the Rule B attachment.

Alphamate's dispute with AFL arises from three contracts for the sale of grain.[5] The contracts contemplated that Alphamate would ship the grain via sea transport and include the term "CFR" (Cost and Freight), meaning that Alphamate was responsible for arranging and paying for transport. Alphamate contends that "the severable contractual undertaking of a buyer of a commodity to pay for the ship's demurrage . . . is very much a maritime obligation." This statement must be examined with care under principles of admiralty jurisdiction.

First, Alphamate does not dispute that the primary subject matter of the Alphamate-AFL contracts is the sale of grain. Sea transport is incidental to accomplishing that purpose. The sale contract here is not maritime *in toto*. A maritime contract is one in which the "primary objective is to accomplish the transportation of goods by sea . . . ." *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 24, 125 S. Ct. 385 (2004). "It is well-established that such a sale of goods by itself would not be 'maritime' merely because the seller agrees to ship the goods by sea to the buyer." *Lucky-Goldstar Int'l (America) Inc. v. Phibro Energy Int'l*

___

[4]If the underlying dispute was maritime, federal court was the proper venue to pursue an attachment against property onboard the M/V GOLDEN STAR. Attaching the corn impeded the ship's departure and interfered with maritime commerce. "[T]he primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce . . . ." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S. Ct. 2654 (1982). State courts could not issue an attachment, even under state law, because doing so would almost certainly interfere with admiralty law. *American Dredging Co. v. Miller*, 510 U.S. 443, 447, 114 S. Ct. 981 (1994) (A state court may not issue any remedy which "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." (quoting *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216, 37 S. Ct. 524 (1917)).

[5]Alphamate never submitted these contracts to the district court, but submitted them to this court by request following oral argument.

*Ltd.*, 958 F.2d 58, 59 (5th Cir. 1992) (internal citation omitted). As summarized in a leading treatise:

> In order to be considered maritime, there must be a *direct and substantial link* between the contract and the operation of the *ship, its navigation, or its management afloat*, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.

1 BENEDICT ON ADMIRALTY § 182 (2010) (emphasis added). A contrary rule would expand admiralty jurisdiction to include nearly every contract involving the sale of goods transported by ship. *Luckenbach S.S. Co. v. Gano Moore Co.*, 298 F. 343, 344 (S.D.N.Y. 1923) (Hand, J.), *rev'd on other grounds*, 298 F. 344 (2d Cir. 1924).

Second, although Alphamate concedes that the contracts are essentially for the sale of goods, it argues that they are "mixed" contracts containing both maritime and non-maritime elements. A mixed contract may create maritime jurisdiction in only two limited circumstances. *Lucky-Goldstar*, 958 F.2d at 59. The court may consider a mixed contract maritime if the contract is primarily maritime and the non-maritime elements of the contract are incidental to that primary purpose. *Id.* That is not the case here. Alternatively, "if a contract's maritime obligations are separable from its non-maritime aspects and can be tried separately without prejudice to the other, admiralty jurisdiction will support trial of the maritime obligations." *Id.* Alphamate contends its demurrage and detention claims are severable maritime obligations.

Demurrage fees are paid by a charterer to the vessel owner when the vessel is detained beyond the specified date agreed to in the charter party contract. This situation typically arises when the charterer fails to load or unload cargo within the agreed time. *See* BLACK'S LAW DICTIONARY 465 (8th ed. 2004). Some courts have held that demurrage claims are separable from sales of good contracts and may be litigated as admiralty claims. In those cases, the

parties' contract created an independent obligation to pay for demurrage, or demurrage was the sole basis of the claim. *See, e.g.*, *Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.*, No. 08-5074, 2008 WL 5101180, at *5-*7 (S.D.N.Y. Dec. 4, 2008) (severing a demurrage maritime claim from a sale of goods contract because the contract created an independent obligation for demurrage charges); *Centramet Trading S.A. v. Egyptian American Steel Rolling Co.*, No. 07-6379, 2007 WL 5731922, at *1 (S.D.N.Y. Sept. 28, 2007) (same); *Kulberg Finances Inc. v. Spark Trading D.M.C.C.*, 628 F.Supp. 2d 510, 517-18 (S.D.N.Y. 2009).

Alphamate asserts that its demurrage claims are separable, but it offers no argument based on its contracts. Simply raising demurrage claims is not enough; the plaintiff must demonstrate an independent, severable obligation. *See French Republic v. Fahey*, 278 F. 947, 949 (D. Md. 1922) (indicating that a non-maritime contract of sale and purchase does not become maritime merely because one of the parties may be entitled to recover demurrage damages). Unlike the cases where courts have found separable demurrage claims, the Alphamate-AFL contracts did not create an independent obligation in AFL to pay demurrage charges. Moreover, Alphamate's demurrage and detention claims stem from AFL's breach of its obligation to purchase the grain. According to Alphamate's summary of claims offered in the pending arbitration, when AFL would not open timely letters of credit for its purchases, Alphamate refused to deliver the contracted cargo. In the ensuing logistical logjam, Alphamate incurred demurrage and detention damages in addition to lost sales. Thus, the demurrage charges, which are maritime in nature, are thoroughly intertwined with the non-maritime breach of contract claims and most likely stand or fall with the broader default claims. Accordingly, the court cannot exercise maritime jurisdiction over this aspect of the dispute. *See Lucky-Goldstar*, 958 F.2d at 59; *Berwind-White Coal Mining Co. v. City of New York*, 135 F.2d 443, 447 (2d Cir. 1943) (The severability of a maritime obligation from a non-maritime obligation

7

No. 09-30804

turns on whether "maritime subject matter is capable of being divided from the rest so that the rights of the parties which flow from the non-maritime part of the contract may be, if necessary, litigated separately and only that part which is maritime be put in issue in the admiralty suit.").

## IV. CONCLUSION

Alphamate did not present a *prima facie* admiralty claim to undergird its Rule B attachment motion.  As the contractual dispute between AFL and Alphamate was not maritime in whole or in severable part, the district court lacked admiralty jurisdiction.  The district court's judgment on the merits must be VACATED and the case REMANDED for further proceedings consistent herewith.

**VACATED and REMANDED**.