**FAREAST COMMODITIES RESOURCES LTD.,**
**Plaintiff,**

v.

**SGS SA and SGS India Private Ltd., Defendants.**

**No. 11 Civ. 1322 (LLS).**

United States District Court, S.D. New York.

March 9, 2011.

Eaton & Van Winkle LLP, Of Counsel: Joseph T. Johnson, Alan Van Praag, New York, NY, for Plaintiff.

## MEMORANDUM AND ORDER

LOUIS L. STANTON, District Judge.

Before me is an application for an order authorizing process of maritime attachment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The application is denied, and the complaint is dismissed for lack of jurisdiction.

### Background

On November 5, 2009, the plaintiff contracted to purchase iron ore fines from Bilasraika Sponde Iron India Pvt Ltd. The contract provided that if the ore contained less than 51% iron, the plaintiff could elect a price adjustment or reject the ore. The load port was Goa Port, India, and the discharge port was Main Sea Port, China. Bilasraika was to appoint either defendant SGS India or another surveyor to determine the weight and iron content of the ore (*see* Compl. Ex. A ¶¶ 7–8); it appointed SGS India, who conducted the inspection and issued its certificate stating that the ore contained 51.83% iron. *See id.* Ex. B. Upon arrival at Main Sea Port, China, the ore was again inspected, and it was determined that it contained only 45.74% iron. The complaint alleges losses of $942,261.40 due to SGS India's negligent misrepresentations of the ore's content, and alter ego liability against SGS SA. Bilasraika is not a party.

The complaint states that this "is a case of admiralty and maritime jurisdiction under 28 U.S.C. 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty and Maritime

Claims." Compl. ¶ 1. It asserts no other basis for this Court's jurisdiction.

### Discussion

■ For a tort to fall within the federal courts' admiralty jurisdiction, it "must have occurred on or over 'navigable waters,'" and "the activity giving rise to the incident must have had a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce." *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir.2009), *citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The plaintiff's claim in this case is that "SGS India's certificate of analysis inaccurately set forth that the iron ore at issue had a composition of 51.83 percent, when it actually had a composition of not more than 45.74 percent" (Compl. ¶ 31), because "SGS India failed to exercise reasonable or due care in its sampling, inspection and testing of the iron ore at issue and in its issuance of its inaccurate certificate of analysis," *id.* ¶ 32.

1.

■ Here, the inspection certificate (dated three days after the completion of the sample-drawing) states that SGS India drew "representative samples of the consignment of Iron Ore Fines while the cargo was being loaded into the barges for onward loading into the vessel", and "One part of the each [sic] sample submitted to our laboratory for analysis . . . ." Compl. Ex. B. Whether or not the sampling during the loading took place "on navigable waters" (which may be doubted) rather than on land, the laboratory evaluation and preparation of the certificate containing the misrepresentations almost surely took place on land. *Cf. Smith v. Mitlof*, 198

F.Supp.2d 492, 500 (S.D.N.Y.2002) (negligent misrepresentation claim did not confer maritime jurisdiction because "These alleged torts, arising out of representations made by Norwalk Maritime in the sale of the *Conservator* to Mitlof, took place on land").

### 2.

■ More significantly, there is nothing maritime [1] about the inspector's duties under the contract. "In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat ...." *Indagro S.A. v. Bauche S.A.*, 652 F.Supp.2d 482, 489 (S.D.N.Y.2009) (internal quotation marks omitted).

■ A "commodity, sale and purchase contract—even if the contract requires [as here] maritime transport relating to the shipment of the commodity—is not maritime in nature." *Id.* at 490–91 (brackets in original) (internal quotation marks omitted). In *Aston Agro–Industrial AG v. Star Grain Ltd.*, 06 Civ. 2805(GBD), 2006 WL 3755156, at *3 (S.D.N.Y. Dec. 20, 2006), although the sales contracts at issue also contained shipment terms, the contracts' "primary objective was, undoubtedly, the sale of wheat. That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipped by airplane." *See also Lucky–Goldstar, Int'l (Am.) Inc. v. Phibro Energy Int'l Ltd.*, 958 F.2d 58, 59 (5th Cir.1992) ("It is well-established that such a sale of goods by itself would

not be 'maritime' merely because the seller agrees to ship the goods by sea to the buyer.").

The contract here ("Sale & Purchase Contract for Iron Ore Fines", Compl. Ex. A) calls for an inspection and appraisal incident to a normal commercial purchase and sale, and does not confer maritime jurisdiction. No other basis for federal jurisdiction is alleged.

Accordingly, the application for attachment is denied, and the complaint (Docket No. 1) is dismissed. *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

So ordered.

---

1. A negligent misrepresentation was a maritime tort in *International Ore & Fertilizer Corp. v. SGS Control Services Inc.*, 743 F.Supp. 250 (S.D.N.Y.1990), see *id.*, 828 F.Supp. 1098, 1104–05. In that case the defendant's subcontractor inspected the holds of a ship and certified their suitability to receive a valuable cargo of phosphates. *Id.*, 743 F.Supp. at 254. That negligent misrepresentation referred to the ship's physical condition, which involved the vessel itself in causing the serious contamination of the cargo, and was necessarily a maritime tort.